JAMES TIMONDS, Plaintiff, v. FRANCIS M. HUNTER, Judge, Defendant.

**APPEAL AND ERROR:** Record on Appeal—Matters de Hors—
1 **Waiver of Jury.** Whether a party has waived his right to a jury must be determined from the record made in the court below, unaided by affidavits adding to or subtracting from such record.

**JURY:** Right to—Waiver Under Statute—Construction of Record.
2 Right to jury may be waived by implication, but it will require a clear case. Doubts will be resolved against the waiver. *Held,* the record failed to show a waiver.

**CERTIORARI:** When Action Will Lie—Refusing Jury in Guardian-
3  ship Proceedings—Inadequacy of Appeal. Certiorari will lie to
correct the action of the lower court in denying to defendant
a right to a jury trial in a proceeding wherein the appointment
of a guardian for defendant is sought on the ground of de-
fendant's mental incapacity. To deny the defendant a jury
in such a proceeding is an "illegality," and appeal affords no
adequate relief.

DEEMER, C. J., and SALINGER, J., dissent.

*Certiorari from Wapello District Court.*—HON. FRANCIS M.
HUNTER, Judge.

THURSDAY, MARCH 18, 1915.

CERTIORARI proceeding brought in this court to test the
legality of the action of the district court of Wapello County
(the defendant judge presiding) in the case of Goudy v.
Timonds pending in such court. The alleged illegality com-
plained of is that the defendant judge denied the petitioner
herein (defendant in that case) the right of trial by jury and
refused to call the jury in such case upon the petitioner's
demand therefor and compelled a hearing of the case before
the court without a jury.

*Roberts & Webber,* for plaintiff.

*Jaques & Jaques* and *Tisdale & Heindel,* for defendant.

EVANS, J.—The case of Goudy v. Timonds was a pro-
ceeding brought in the Wapello county district court under
Secs. 3219 and 3220, whereby it was sought to have a guar-
dian appointed for the defendant therein on the ground that
he was of unsound mind. The petitioner herein is the defend-
ant therein and his daughters are the plaintiffs therein. The
petition was filed on January 8, 1914. An order appointing
a temporary guardian was entered without notice. The case
was brought for the March term of court, to begin March 23rd.
On January 16th, the defendant therein filed a motion to set

aside the order of temporary guardianship. At the same time, he filed his petition in an equity suit brought by him against the plaintiffs in the guardianship proceedings, whereby he sought to enjoin the plaintiffs from prosecuting such guardianship proceedings. He also prayed for a temporary injunction. On January 17th, Judge Anderson, then holding the January term, entered an order fixing January 22nd as the time for hearing the application for temporary injunction. On January 19th, the parties by their attorneys appeared in open court and before Judge Hunter, who was then presiding for Judge Anderson, agreed to the following order, which was entered of record:

"Be it remembered that on this 19th day of January, A. D. 1914, by agreement this cause is to be tried to the court, Hon. F. M. Hunter, Judge, on a date to be hereafter named by him. Testimony of James Timonds to be taken before said Judge January 24, 1914, and the testimony so taken shall be used in the case James Timonds vs. Nora Goudy et al."

On January 24th, Judge Hunter was unable to be present. Thereupon, upon such date, the court continued "all matters pending herein" to the March term. In the early part of the March term, the attorneys for the defendant therein asked that another date be fixed for the taking of the testimony of Timonds. Thereupon, April 6th was fixed as "the time for taking the testimony of said James Timonds." In pursuance of this order, the testimony was taken on such date. Under the order of the court, the jury for the March term was called for April 27th. On April 21st, the assignment of jury cases was made. At the time of such assignment, the defendant Timonds demanded a jury trial and asked that his case be assigned accordingly. This demand was resisted by the plaintiffs. The court did not definitely rule upon the question, but assigned the case for trial for May 11th. On May 11th, the defendant again demanded a trial by jury. This demand was finally denied and the defendant was required to proceed

to trial before the court without a jury. After the hearing of the evidence and after an expression of opinion thereon by the trial judge, but before any judgment was entered therein, the defendant sued out the writ herein to test the legality of the action of the court and obtained a restraining order whereby the district court was restrained from entering judgment until this proceeding could be heard. Because of such restraining order, no judgment has been entered in such case.

Two questions are involved in the case as made upon this record:

(1) Did the trial court err in denying the defendant jury trial?

(2) Is the remedy of certiorari available to such defendant to cure such error or illegality, if any?

Of the two questions stated, the second is the more difficult. Its consideration can only become necessary if we find in the affirmative on the first question and we proceed to this inquiry.

The ground of resistance to the defendant's demand for a jury was two-fold:

(1) That by the agreement of January 19th, the defendand had waived a jury.

(2) That the taking of the testimony of Timonds on April 6th was a beginning of the trial and that the demand for a jury therefore came too late.

Both of these grounds were ultimately sustained by the court and the refusal of a jury was based thereon. We have already set out the agreement entered of record January 19th.

1. APPEAL AND    Some extraneous evidence has been included
ERROR: record   in the record in the form of affidavits which
on appeal:
matters *de*
*hors:* waiver of  purport to aid such record either by adding to
jury.            it or taking from it, but we think the record
must speak for itself. The agreement referred to was made by attorneys. It is the policy of the law that such agreements shall not be left open for future cavil, and ordinarily the same

must be reduced to a signed writing or entered upon the records of the court.   Code, Sec. 319.

In construing this entry, perhaps it ought to be borne in mind that, so far as the main guardianship proceeding was concerned, it was not at issue.   The answer was not due until the second day of the March term and no answer was on file. The same is true of the equity case.   There was pending, however, a motion to discharge the temporary guardian in the one case and an application for a temporary injunction in the other.   One or both of these had been previously set for hearing on January 22nd.   Of course no right of jury trial was involved upon the hearing of either of such applications.   The order contains no reference to a jury nor does it purport to contain a waiver of jury trial unless that is the necessary effect of the order as made.   If the order had related to nothing but the method of trial, there would be more force in saying that its necessary effect was to waive a jury.   But the order involved an agreement to try the case before Judge Hunter, who was not the regular judge holding that term. It authorized him to fix a date of trial.   It also provided for the taking of the testimony of Timonds on January 24th.   It appears from the defendant's return herein that the attorneys for Timonds in the guardianship proceeding were anxious to reach an immediate trial because of the uncertain tenure of life of their client, he being then eighty-six or eighty-seven years old and in feeble health.   This solicitude on their part is practically conceded.   If, in the light of this fact, the record should be construed as an agreement for an immediate trial without a jury, yet the provision for an immediate trial failed. No hearing was had at the January term, although it continued to March 14th, nor was the testimony of Timonds then taken.   At the March term, the main guardianship proceeding was put at issue and assigned for trial in the ordinary course. If this agreement, therefore, could be construed as a waiver of the jury for the purpose of an immediate trial at the January term, it affords no ground for holding such waiver appli-

cable to the succeeding term. We are clearly of the opinion, therefore, that there was nothing in the agreed order of January 19th which precluded either party from demanding a jury at the March term.

It remains to consider whether the trial of the case was actually begun on April 6th as contended. When Timonds appeared for the taking of his testimony on April 6th, the respective attorneys undertook to show of record the arrangement under which such testimony was to be taken. The record then made by the reporter was the following dialog:

Senator Webber: "It is agreed between both parties, all of the parties in the above cases to wit: the case of James Timonds vs. Nora Goudy et al., and Watson Enyart, Guardian, and the case of Nora Goudy et al., plaintiff, vs. James Timonds, defendant, that the testimony or evidence given by James Timonds, the plaintiff in the first case and the defendant in the second, that the evidence shall be heard as his deposition in both cases to be tried in the future.

Judge Tisdale: "Strike that out, I can beat it. Now it is agreed in these cases that the testimony of James Timonds taken today may be used on the trial of the above—of both of these proceedings, to wit: Nora Goudy et al., vs. James Timonds, and James Timonds vs. Nora Goudy et al., Watson Enyart, Guardian, and this is the beginning of the trial of the two cases heretofore consolidated by order of the court and a jury waived in the probate case.

Senator Webber: "I do not believe our preference would be in having the testimony of James Timonds at this time be taken, it is more in the nature of a deposition agreed to by both parties.

Judge Tisdale: "This is the beginning of the actual trial of the cases.

Chester Whitmore: "Are you making him your witness?

Judge Tisdale: "No, sir. This is not a preliminary matter, this is the beginning of the trial of these cases, we were

to take his testimony to accommodate you, it is not in the nature of a deposition, but testimony in open court in the trial of the two cases; if Your Honor will turn to the docket you will find—

Senator Webber: ''We want to take his deposition.

Judge Tisdale: ''There is no agreement to take his deposition, they wanted me to go out and I declined and they got it set down here before the court. They wanted me to go out to take his testimony, but I declined.

Chester Whitmore: ''Well, go ahead, make him our witness in the two cases, let us proceed.''

It will be noted that Judge Tisdale was representing the plaintiffs and Senator Webber and Mr. Whitmore were representing the defendant. Judge Roberts, who represented the defendant on January 19th, was not present on this date. It will be noted from the foregoing dialog that it ended where it began and settled nothing. The controversy at this point simply involved a construction of the agreement of January 19th. The date of January 24th having failed because of the inability of the judge to be present, he fixed the later date of April 6th. The agreement of January 19th speaks for itself. Its provision was that the date of trial was to be ''hereafter named'' by the judge. But the ''testimony of James Timonds'' was ''to be taken January 24th, 1914.'' Manifestly, the agreement of January 19th did not contemplate that the taking of the testimony of James Timonds should be the beginning of the trial. So far, therefore, as the colloquy between the respective counsel above set forth is concerned, the attorneys for the defendant were clearly right in their construction of the order under which the testimony of Timonds was to be taken. And this conclusion is consistent with the record of the court as actually made on succeeding dates. The record entries show that on April 21st, the case was assigned for May 11th; that on May 11th, the trial was begun. There is no record entry which purports to say that the trial

was begun on April 6th. To hold, therefore, that the trial began on April 6th because of the taking of the testimony of Timonds is to contradict the only record entry on the subject, —that the trial began on May 11th. It should be noted here that the equity case was dismissed on April 21st.

We do not overlook the fact that, on May 12th, the trial court expressed the view that the trial began with the taking of the testimony of Timonds on April 6th and thus substantiated the contention of the plaintiffs, and that the opinion so expressed was taken down by the shorthand reporter and is incorporated as a part of the return.

This ruling, however, only purported to be a construction of the court's previous records and not a correction of any record. When the ruling was made on May 12th, the record had already been made that the trial began on May 11th. This was consistent with the court's record for April 6th, there being no trial record entered for this date in such case.

On the general question of waiver of jury, we have the following statutory provision (Code, Sec. 3733):

"Trial by jury may be waived by the several parties to an issue of fact in the following cases:

"1. By suffering default or by failing to appear at the trial;

"2. By written consent, in person or by attorney, filed with the clerk;

"3. By oral consent in open court, entered in the minutes."

We have held that a jury may be waived also by going to trial without objection and without demand for a jury. *Saum v. Jones County,* 1 G. Gr. 165; *Davidson v. Wright,* 46 Iowa 383. It is in accord with the weight of authority that even an express waiver of a jury at one trial of a case is not necessarily operative as a waiver of a jury on a subsequent trial. *Cochran v. Stewart,* 68 N. W. (Minn.)

972. And this is especially true where the first waiver was by implication only. *Schumacher v. Crane,* 92 N. W. (Neb.) 609. Even a stipulation of the parties is to be strictly construed in favor of the right to a jury and a waiver is not to be lightly inferred by implication. *Wittenberg v. Onsgard,* 81 N. W. (Minn.) 14. We have held that what might have been a sufficient waiver by implication at one term cannot be regarded as such at a subsequent term. *Smith v. Redmond,* 141 Iowa 105.

Turning to the record herein, if the record entry for January 19th disclosed a waiver of the jury in the trial of the main case, it was such by implication only. True, if the parties had come to trial without demanding a jury, a waiver would be implied. But they did not. No provision of Sec. 3733 was complied with. If the record entry could be aided by a showing of the exigencies of the time and the desire of the parties for an immediate trial, this would furnish no fair reason for extending the implication of a waiver to the subsequent term.

2. JURY: right to: waiver under statute: construction of record.

It is clear, also, that the order of January 19th did not contemplate that the date of taking the testimony of Timonds should be deemed as the date of the beginning of the trial. An express date was fixed for the taking of such testimony, while the date of the beginning of the trial was expressly left open, to be determined later.

The conclusion is unavoidable, therefore, that the defendant was entitled to demand a jury at the succeeding term; that his demand therefor on April 21st, when the assignment for the term was being made and when this case was assigned for May 11th, was timely. This demand being repeated and insisted upon when this case was reached for trial on May 11th, the refusal of the demand was not warranted under the statute.

II. This brings us to the necessary consideration of the more difficult question whether the error of the court was an

illegality for which no other plain, speedy and adequate rem-
edy is provided within the meaning of Sec.
4154. We have held repeatedly that where
there is no excess of jurisdiction and where
the illegality is merely an erroneous conclu-
sion for which an adequate remedy is pro-
vided by appeal, a writ of certiorari will not lie. The line of
demarcation between a merely erroneous conclusion and an
illegality for which no other adequate remedy is provided
cannot be very exactly defined. In *Butterfield v. Treichler,*
113 Iowa 328, a jury trial was erroneously permitted (as was
held later in *Porter v. Butterfield,* 116 Iowa 725). We held,
however, that the remedy by appeal was adequate and that
the writ of certiorari would not lie to correct such error. It
is urged with force that such holding is decisive of the present
question; that is to say, if the writ will not lie to correct an
order erroneously granting a jury trial, it cannot lie to cor-
rect the converse order erroneously refusing a jury trial.
It is urged that in either event a merely erroneous conclusion
was involved and no more. It is generally true that illegality
or excess of jurisdiction, if any, is necessarily preceded by
an erroneous conclusion. If the erroneous conclusion results
in an illegality within the meaning of Sec. 4154, then there
is an illegality and not *merely* an erroneous conclusion. The
right to a jury trial in this case was an explicit statutory
right. The defendant was deprived of it as effectively as if
the refusal had been arbitrary. In *State v. Carman,* 63 Iowa
130, it was held that the district court had no jurisdiction
to try a criminal case without a jury. In that case, the de-
fendant had expressly waived a jury. This court held, how-
ever, that there was no statutory provision authorizing the
defendant to waive a jury and that such waiver was, there-
fore, ineffective. The reasoning in that case is not neces-
sarily applicable to a civil case, but it comes close to the gen-
eral question whether the trial judge has power to try a jury
case without a jury in the face of a demand for a jury. It

3. CERTIORARI:
when action
will lie: re-
fusing jury in
guardianship
proceeding:
inadequacy of
appeal.

is clear that he has no statutory authority to do so. It is also clear that the statute gives to either litigant the express right to a jury trial. The necessary effect of this provision is to withhold from the trial judge the power or authority to try the issues of fact in the case except by the consent of the litigants, either express or implied. In a broad sense, the court had jurisdiction both of the parties and the subject-matter. This jurisdiction was not defeated by mere errors. In a sense, also, the trial judge is the court. He is its head and its hand. In a jury case, however, the jury is also a part of the court. Its function is well defined. Its power to determine issues of fact upon conflicting evidence is the power of the court to that end. That power can be exercised by the trial judge in a jury case only by the consent of the parties, either express or implied. To refuse a proper demand for a jury and to exercise the jury power over the objection of the demanding litigant is an exercise of power by the trial judge beyond the provision and contemplation of the statute. If this was not an illegality within the meaning of Sec. 4154, then it would be difficult to apply the term to anything less than a defeat of jurisdiction. We reach the conclusion that the action complained of was such illegality.

III.. For this illegality, had the defendant any other plain, speedy and adequate remedy? The only other remedy available to the defendant would have been by appeal. In order to render such remedy available at all, he must first submit. to adverse judgment. The effect of such judgment would be to fix his status as a person of unsound mind. Theoretically, this proceeding is not adverse. It is prosecuted for the supposed benefit of the defendant himself. No one other than the defendant has a legal interest in the result. And yet the correctness of the result is of the highest importance to the defendant. A judgment making the guardianship permanent puts him under disability as a *non compos mentis*. It not only deprives him of the present control of his property but it renders him presumptively incapable, and perhaps conclusively

so, of entering into any contract or making any testamentary disposal of his property. The defendant is eighty-seven or eighty-eight years old. His health is impaired and his expectancy of life is very brief. An adverse judgment would fix his status, for the time being. He could not supersede it pending the appeal. If he should die before his appeal could be heard and determined, it is doubtful at least whether his appeal would not be abated thereby. The result would be to leave his status as fixed by the judgment at the time of his death.

On this branch of the case, the court is divided in opinion. As indicated in the dissent filed herewith, the minority think that the writ of certiorari is not available to the plaintiff. The majority reach a contrary conclusion. We recognize the fact that the ground is narrow, but we are convinced that it comes within the call of the statute. The illegality is unmistakable. The remedy by appeal is not available to him for want of judgment and cannot be available to him until after judgment.

As rehearsing the ground of our holding, therefore, we are disposed to emphasize the following recapitulation:

(1) The right of the defendant to a jury upon his demand was explicit and unmistakable. It was not dependent upon the finding of any disputable fact. The judge lacked statutory power to try the case without a jury without the consent of the defendant, either express or implied. There was no consent. There was insistent demand for the jury. The refusal of a jury in the presence of this demand was the equivalent of an arbitrary refusal, though not intended as such. It was not a legal exercise of the judicial power to hold that a demanding litigant was consenting contrary to his demand.

(2) The remedy by appeal cannot become available to the defendant unless he first submits to an adverse judgment and thereby loses his status as a *compos mentis*. This loss of status is an important consideration as bearing upon the ques-

tion of whether the remedy by appeal is adequate. It cannot be superseded by bond or otherwise. It will operate to his immediate disability. This will not only deprive him of the dominion of his property but it will render him helpless to make any disposal of the same either testamentary or otherwise. It is at least doubtful whether the proceedings could be reviewed at all if his death should occur before such review were had.

(3) There is no party in interest in the guardianship proceedings except the defendant. They are both prosecuted and defended for his benefit alone. No other party has any interest adverse to him. No one can be wronged by the granting of plenary remedy to him.

In brief, therefore, we think that the defendant is entitled to maintain his status as presumptively *compos mentis* until the jury which he has demanded shall find otherwise.

That the peculiar circumstances of the particular case may be considered as bearing upon the question of the adequacy of the remedy by appeal was held in *Voting Machine v. Hobson,* 132 Iowa 38.

We think it must be said, therefore, that an appeal would furnish the defendant no remedy against the immediate disability to which adverse judgment must subject him. It is therefore not adequate. The writ issued herein must be sustained and the order complained of annulled.—*Annulled.*

LADD, PRESTON, and GAYNOR, JJ., concurring; DEEMER, C. J., and SALINGER, J., dissenting; WEAVER, J., not sitting.

DEEMER, C. J. (Dissenting). Certiorari will not lie unless it be alleged and shown that the tribunal has exceeded its proper jurisdiction or otherwise acted illegally; and it must also appear that there is no other plain, speedy and adequate remedy. Code Sec. 4154. It will never lie to correct an error, but is only to test the jurisdiction of the tribunal and the legality of its acts. *State v. Roney,* 37 Iowa 30.

Where a party has the right of appeal, he cannot, as a

rule, proceed by certiorari. *Ransom v. Cummins,* 66 Iowa 137; *State v. Schmidtz,* 65 Iowa 556. Therefore when a court, in the exercise of its jurisdiction, proceeds regularly and according to the usual course of procedure, the action will not lie, no matter how erroneous its decision. In the case now under consideration, there is no question regarding the jurisdiction of the court and it does not appear that it acted irregularly or departed from the usual course of procedure; or that its acts were in any way illegal, save that it came to a wrong conclusion upon the evidence adduced, and made an erroneous ruling.

There was consequently no irregularity or illegality in its proceedings. Little difficulty arises when the question involves the matter of jurisdiction or of excess thereof.

The only question of doubt in any of these cases, as a rule, is whether or not the action of the court is illegal, as that term is used in the statute. Our previous pronouncements upon this question are very clear. For example, in *Eels v. Bailie,* 118 Iowa 519, the court said: "It is fundamental that a writ of certiorari is never used to correct a mere error, but only to test the jurisdiction of the tribunal and the legality of its action. If the mistake complained of was a mere matter of judgment the writ will not ordinarily lie; for the tribunal guilty thereof is not acting illegally. Sec. 4154 of the Code also provides that the writ should not be granted when there is another plain, speedy, and adequate remedy. Under this section it has frequently been held that the writ should not be granted where the error complained of can fully and speedily be corrected by appeal. *State v. Schmidtz,* 65 Iowa 556; *Ransom v. Cummins,* 66 Iowa 137; *Remey v. Board,* 80 Iowa 470; *Oyster v. Bank,* 107 Iowa 39. . . . Both defendants had jurisdiction to pass upon these motions, and the error, if any, was a mere mistake of judgment, which cannot be reviewed in this action. Plaintiff invoked the jurisdiction, or rather the action, of the district court over which defendants preside, asked it to pass upon his motion to dismiss, and is now complaining of the rulings denying his motion. This is all there

is to the case as it is presented to us. Manifestly, the court, and the defendants as the presiding officers thereof, had the right, and it was their duty, to pass upon those motions to dismiss; and, if they erred, it was an error of judgment, from which an appeal may be taken in a proper case. But they were not without jurisdiction, nor were they acting illegally in overruling the motions. Concede that their actions were erroneous, it does not follow that they were acting illegally, for as pointed out in the case first cited, if the mistake is one of judgment merely, about a matter on which defendants had a right to pass, their actions were not illegal. . . . When it is once conceded—as it must be—that defendants, as judges, had the right to pass upon plaintiff's motion, the case is determined; for it follows that they had jurisdiction, and did not act illegally, as that term is used in law. This is made plain by the authorities heretofore cited. See, also, *Davis Co. v. Horn*, 4 G. Greene 94, and particularly *Fagg v. Parker*, 11 Iowa 18, where it is said: 'It is no part of the office of the writ of certiorari to correct every alleged error of judgment in judicial tribunals which parties claim take them by surprise. Nor, again, does this writ issue to correct an error, where the party has lost the plain, speedy, and adequate remedy pointed out by law by his own fault and negligence.' . . .

"In *Sunberg v. District Court, Linn County*, 61 Iowa 597, it is said: 'The order in the district court transferring the cause to the United States court was within its jurisdiction. While the order may have been erroneously made, it cannot be claimed that the court exceeded its jurisdiction. The petition does not show that the court acted illegally; that is, that its proceedings were not in accord with law, in transferring the case. The real ground of complaint is that the court erred in substituting new defendants in the action. If they had been regularly and lawfully substituted, there would have been no irregularity or error in transferring the case. The order to that effect cannot, therefore, be reviewed upon certiorari, for

the court in making it did not exceed its proper jurisdiction, or otherwise act illegally.' ''

Again, in *Butterfield v. Treichler,* 113 Iowa 328, the court said: ''The writ of certiorari is never used to correct a mere error, but only to test the jurisdiction of an inferior tribunal. *State v. Roney,* 37 Iowa 30; *Ransom v. Cummins,* 66 Iowa 137. The trial court clearly had jurisdiction to rule on these matters.''

In *Darling v. Boesch et al.,* 67 Iowa 702, the court said: ''The writ of certiorari is granted when the inferior tribunal, board or officer, is alleged to have exceeded his proper jurisdiction, or is otherwise acting illegally (Code ['73] Sec. 3216) and it cannot be said that the board has acted unlawfully because it erred in the determination of a question which it was required to determine in the proceeding.''

In *Finn v. Winneshiek District Court,* 145 Iowa 157, we said: ''Certiorari is, or may be, an original proceeding in this court, and may be brought in all cases where an inferior tribunal, exercising judicial functions, is alleged to have exceeded its proper jurisdiction, or otherwise acted illegally, and there is no other plain, speedy, and adequate remedy. Code, Sec. 4154. It is not intended to supplant the ordinary remedy of appeal, and will not lie to correct rulings of an inferior tribunal which are simply erroneous. *State v. Roney,* 37 Iowa 30. Where a party has a right of appeal he cannot ordinarily proceed by certiorari: *Ransom v. Cummins,* 66 Iowa 137; *State v. Schmidtz,* 65 Iowa 556; *Wise v. Chaney,* 67 Iowa 73. . . . These were each and all matters which might have been corrected on appeal, and the order requiring plaintiff to answer each and all of the cross-interrogatories, etc., was at most erroneous and not illegal. The distinction between an erroneous and an illegal order is well pointed out in *Tiedt v. Carstensen,* 61 Iowa 334, where it is said:

'' 'We are, therefore, only to inquire, when is a tribunal

"acting illegally" in the contemplation of the statute? When the law prescribes proceedings to be had by an officer or tribunal in cases pending before them, the omission of such proceedings is in violation of law, and the court or officer omitting them would, therefore, act illegally. In a word, if a tribunal, when determining matters before it which are within its jurisdiction, proceeds in a manner contrary to law, it acts illegally. But if a discretion is conferred upon the inferior tribunal, its exercise cannot be illegal. If it be clothed with authority to decide upon facts submitted to it, the decision is not illegal, whatever it may be, if the subject-matter and the parties are within its jurisdiction, for the law entrusts the decision to the discretion of the tribunal.' "

Again the question was before the court, in *Iowa Loan and Trust Co. v. District Court,* 149 Iowa 66, and we there stated: "The question presented by the writ is whether the defendant exceeded his jurisdiction, or otherwise acted illegally. If his action was merely erroneous, a writ of certiorari will not lie. The distinction between an erroneous order and an illegal one is thus stated in *Tiedt v. Carstensen,* 61 Iowa 334: 'When the law prescribes proceedings to be had by an officer or tribunal in cases pending before them, the omission of such proceedings is in violation of law, and the court or officer omitting them would therefore act illegally. In a word, if a tribunal, when determining matters before it which are within its jurisdiction, proceeds in a manner contrary to law, it acts illegally. But if a discretion is conferred upon the inferior tribunal, its exercise cannot be illegal. If it be clothed with authority to decide upon facts submitted to it, the decision is not illegal, whatever it may be, if the subject matter, and the parties are within its jurisdiction, for the law entrusts the decision to the discretion of the tribunal.' See also *Wise v. Chaney,* 67 Iowa 73; *Medical College Assn. v. Schrader,* 87 Iowa 659; *Voting Machine Co. v. Hobson,* 132 Iowa 38; *Finn v. District Court,* 145 Iowa 157."

It is true that Judge Evans dissented from the conclusion in this case, but the rule has several times been reaffirmed since the filing of that opinion. See *Witmer v. District Court, Polk County*, 155 Iowa 244, where the doctrine was reannounced, and as said in the last cited case: ''Indeed, the general proposition that an erroneous ruling of a court in a proceeding of which it has jurisdiction cannot be reviewed on certiorari has so often been announced that further citation of authorities would not be justified.''

Still later, in *Hatz v. Hutchinson*, J., 168 Iowa 141, the court, speaking through Evans, Justice, said: ''If the court had jurisdiction to hear the appeal, it could not avoid the question thus presented to it. If it had jurisdiction to count the names as a part of the petition, it necessarily had the same jurisdiction to reject them as having been withdrawn. If it be assumed that the petitioners were right in their contention before the district court that the names in question ought to have been counted as part of the petition of consent, the contrary finding by the district court was only an erroneous conclusion and was not an 'illegality' in any other sense.''

The rule has been announced in a variety of cases and has never been departed from, so far as I have been able to discover. *C. B. & Q. R. R. v. Castle*, 155 Iowa 124, is not a departure from the rule because the court expressly found that the order there reviewed was in excess of the court's jurisdiction, and that it imposed a penalty which was not only erroneous, but irregular and illegal.

The rule has been applied in a variety of cases. For instance:

In an action where an order on a petition for a removal of the cause to the federal courts was involved, the court having erroneously ordered a transfer to the federal court, it was held that the action could not be reviewed by certiorari. In one of the cases, it was held that the erroneous dismissal of an appeal from a justice's court to the district court could not be reviewed on certiorari.

In several cases it was held that the erroneous exclusion of testimony, or an order for the production of books or papers, a motion for a change of place of trial, and various other matters, could not be reviewed, save that the court was without, or acted in excess of, its jurisdiction.

In a recent case, it was held that an erroneous order denying a change of venue could not be reviewed on certiorari. *Barry v. Court,* 167 Iowa 306. See also, as sustaining the doctrine I have announced: *Ferguson & Son v. Town,* 119 Iowa 338; *State v. Parker,* 147 Iowa 69; *Ransom v. Cummins,* 66 Iowa 137.

In the latter case it is said: "The justice of the peace had jurisdiction of the cause and of the parties. He had jurisdiction to determine every question of which plaintiff complains. If his rulings were erroneous, the plaintiff had a plain, speedy and adequate remedy by appeal. He would have been entitled upon appeal to make an application for a change of venue, and to challenge jurors, and to a verdict in proper form."

It is very clear to my mind that the trial judge in this case had jurisdiction and that the most that can be said of his order is that he erred in his conclusion, either in his finding of facts or in his conclusion of law. He did not act illegally nor were his proceedings irregular. He had full jurisdiction of both parties and subject-matter, and it will not do, I think, to say that if erroneous conclusions result in illegality, then there is illegality, and not merely an erroneous conclusion. This, to my mind, is reasoning in a circle; otherwise all erroneous conclusions are illegal, and this is manifestly not true. A case much like this one is *Butterfield v. Treichler,* 113 Iowa 328, wherein it was held that the writ of certiorari would not lie because the court erroneously directed a jury trial in a case where such was not permissible. I can hardly understand the logic of an opinion which holds that, if a jury trial is denied where the parties are entitled to it, then they are entitled to a writ of certiorari to review the ruling; whereas,

if granted when they are not entitled to it, such writ will not lie.

I feel that this opinion, if adopted by the majority, is an overruling of the Butterfield case. That case has so many times been followed and adopted and the doctrine upon which its is based is so well settled in this court that I do not think it opportune to overrule it.

Much more might be said in support of my conclusions, and many cases cited, not only from this court, but from other jurisdictions sustaining the rules I have announced; but I shall not do more at this time than to quote from a learned opinion of the Louisiana court, as follows:

"The functions of a certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. They have never been to inquire into the correctness of the judgment rendered where the forms of the law have been followed, and where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of this court, under a certiorari, must be restricted to an examination into the external validity of the proceedings had in the lower court. It cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case. The supervisory powers of the court must not be confounded with its appellate jurisdiction. In the case referred to the district court had jurisdiction, and the proceedings are regular on their face. If the relator has the rights which he asserts, and if, by the refusal of the District Judge to recognize and enforce them, he is prevented from preparing his defense, and the matter is properly presented in the prosecution proceedings the same may be inquired into on an appeal, and justice can then be done." *State ex rel. Matranga v. Marr*, 10 L. R. A. 248.

This is all so elementary that the majority do not dispute it, but seek to avoid it. It remains to be considered whether, indeed, the case at bar has anything that takes it out of the rule.

There was a resistance to the demand of the defendant for a jury, and the trial court was compelled to pass upon the merits of that resistance, and, as an incident thereto, on whether something had occurred earlier that operated as a waiver of jury trial; and some considerable reasoning is indulged in by the majority opinion as to whether what occurred operated as such waiver. It is admitted here that there is for consideration whether a trial was begun, and thereby objection to trial without jury came too late in view of the statutory provision that a jury may be waived by going to trial without objection and without a demand for a jury, and it is said by the majority that if a record entry made below discloses a waiver of jury in the trial of the main case, it was such by implication only.

Conceding, for the purpose of this dissent, that, if a trial court arbitrarily denied a trial by jury where in reason no question could be and none was made as to the right to such trial, certiorari will lie, but does that meet a case where the original jury trial was fairly in contest and its contest submitted to the court and it decided it in a way that we think it should not be decided?

If the majority is followed to the logical end, then certiorari lies in every case where a trial by jury is denied when it should have been allowed. In some special proceedings such trial is and in others it is not granted. Motion to transfer either to law or to equity always involves whether there shall or shall not be a jury trial. Motions to direct a verdict present whether the court rather than the jury shall decide the cause. Is certiorari entertained to test the rulings in such matters as these just referred to?

Suppose the defendant does have but a short expectancy,

and is old and in poor health.   Does this have bearing on whether an appeal is or is not a speedy and adequate remedy? So to hold creates a new definition.   If it be correct, only strong, young men will be denied certiorari, while it will be entertained for the old and feeble.   As none may know when death will come, appeal would never be to a certainty a speedy and adequate remedy.

Suppose an adverse judgment here would create the status of an incompetent, and that this might make complications in the event of death; how does that differ in principle from divorce, or a judgment that one has not been adopted, or an unrecognized illegitimate?

Why would not a suspensive writ pending appeal and advancing the submission of the cause give all the speed and adequacy, the existence of which denies the writ of certiorari?

SALINGER, J., concurs in this dissent.