CHARLES P. HALL, APPELLANT, V. LYMAN S. HALL ET AL., APPELLEES.

FILED JANUARY 7, 1932. No. 27943.

*Crossman, Munger & Barton,* for appellant.

*Charles E. Matson, John J. Ledwith, C. E. Sanden* and *Bernard S. Gradwohl, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action in equity brought in the county court of Lancaster county, Nebraska, January 30, 1930, for the purpose of setting aside and canceling a judgment theretofore entered in said court on April 17, 1928, declaring the plaintiff an incompetent and appointing defendant John J. Ledwith guardian for the management of plaintiff's estate. No appeal was taken from such judgment, and this is an independent action to set it aside on the grounds of alleged fraud practiced by plaintiff's attorneys, defendants Ledwith and Charles E. Matson of the Lancaster Bar.

Prior to the guardianship proceedings, plaintiff was a farmer living on his homestead near Elmwood, in Cass county, Nebraska, for a period of over 50 years. His family consisted of his wife and nine children, all of whom are of age and none of them living at home at the time of these proceedings. His wife died in 1926. Plaintiff was and is the owner of personal property consisting principally of farm mortgages of the value of $100,000 and unincumbered real estate of the value of about $150,000.

January 4, 1928, plaintiff married Estelle G. Fowler, a widow 68 years of age. This lady was the mother of John Fowler, an officer of the Federal Trust Company of Lincoln, with whom plaintiff had done business exclusively for more than ten years in making investments in farm mortgages. Upon his marriage plaintiff went to live with his wife at her home in Lincoln, Lancaster county, taking with him his clothes and personal effects and securities, and continued to live there down to the present time.

On February 23, 1928, plaintiff's nine children filed a petition in the county court of Lancaster county, alleging that on account of plaintiff's advanced age, at that time 79 years, he was incompetent to transact business and care for his property, and prayed for the appointment of a guardian. Personal notice of these proceedings, together with a copy of the petition, was served upon the plaintiff, and upon the recommendation of Fowler, his step-son, plaintiff employed the defendant John J. Ledwith to rep-

resent him in said proceedings and defend against the application for the appointment of a guardian, and later on, at the suggestion of plaintiff, Mr. Charles E. Matson was employed as an attorney to assist Mr. Ledwith. A number of consultations were had between plaintiff and his attorneys, an informal inventory of his property was taken, and Mr. Hall's deposition was taken at the instance of the petitioning children in the presence of two doctors who, it appears, were present to observe the conduct and demeanor of the plaintiff while testifying. The deposition is not in evidence and we are therefore not informed of its contents.

The application came on for hearing before the county court on April 16 at 2 o'clock p. m. All of the petitioners with their attorneys, C. E. Sanden and Bernard S. Gradwohl, and the plaintiff and his attorneys, Ledwith and Matson, were present. Plaintiff was called as a witness by the petitioners and examined by their attorneys and by the court, but not cross-examined. About three hours were consumed in the examination, and at 5 o'clock the court adjourned until the morning of the 17th at 10 a. m. No further evidence was offered, and the county judge announced that he would find the defendant incompetent and appoint a guardian for his estate, but not for his person, and asked the plaintiff if there was any one he would like to nominate as his guardian. Plaintiff replied that he would like to have one of his attorneys, John J. Ledwith, appointed. Thereupon Mr. Ledwith was called and examined as to his qualifications and willingness to accept the appointment. Counsel for petitioners objected to the appointment of Mr. Ledwith on the ground that he had been the attorney of Mr. Hall, but the county judge, being fully convinced of the good character and ability of Mr. Ledwith, announced that he would appoint him guardian upon giving a bond in the sum of $100,000. Later in the day a decree was entered to that effect. Bond was duly filed and Ledwith took possession of the assets and continues to act as guardian, making regular reports to the court.

After the first day's hearing Ledwith and Matson had a consultation with the plaintiff, in the evening, at Ledwith's office, in which they informed plaintiff that the court would probably appoint a guardian, but that plaintiff had the right to nominate the person to be appointed, to which plaintiff replied that he wanted Mr. Ledwith, and did not want any one appointed by his children, and thereupon a written consent to the appointment of Mr. Ledwith was prepared and signed by Mr. Hall and filed in the county court the following morning.

For a year or more the guardian managed the estate without any objections from plaintiff, leasing the different portions of the real estate to some of the children, upon terms which, so far as the evidence shows, were usual and customary, and without objection by plaintiff until when plaintiff desired a certain 80 acres in Cass county to be leased to one Roden, which the guardian refused to do, having already leased it to one of plaintiff's sons for that year. This is the first and only dispute between the guardian and his ward regarding the management of the estate. An allowance of $500 a month, later reduced to $400, was made for the support of plaintiff by the county court, and paid to him.

January 30, 1930, the petition herein was filed in the county court against the nine children of plaintiff and the guardian, to set aside the guardianship proceedings upon two grounds: (1) That the plaintiff at the time was a resident of Cass county and that the county court of Lancaster county had no jurisdiction; (2) that the decree finding plaintiff incompetent and appointing a guardian over his estate was procured by fraud of plaintiff's attorneys. The petition alleges that plaintiff employed Ledwith as his attorney, and later Mr. Charles E. Matson, to resist the charge of incompetency; that he believed himself competent; that prior to the date set for hearing plaintiff's deposition was taken but no evidence was offered at the trial; that plaintiff's attorneys advised him that the proceedings could be terminated and his property handled

by guardian but not that such appointment required finding of incompetency; that, while guardian, Ledwith advised him to make a will wherein the Federal Trust Company, of which Ledwith was the attorney, was named as executor; that he executed the written consent to the appointment of Ledwith not knowing that a finding of incompetency was necessary; that he was not advised of any question of jurisdiction; that his attorneys stipulated with opposing counsel that plaintiff was a resident of Lancaster county; that Ledwith, as an inducement to sign the consent to his appointment as guardian, represented that he would handle the property as plaintiff wished, that the guardianship was a mere matter of form; that the form of the decree was determined by the attorneys without being submitted to him, and he had no knowledge of its terms until shortly before this suit was commenced; that his attorneys did not advise him of his right of appeal; that he was a resident of Cass county and the Lancaster county court had no jurisdiction; that, by reason of the above matters, his attorneys were guilty of fraud; that he is in fact mentally competent; and prays that the judgment may be set aside and canceled, and for general relief.

The children answered, admitting the court proceedings, taking of the deposition, filing of a stipulation as to residence, and denying all other allegations. They then allege that the plaintiff is incompetent, and a resident of Lancaster county. Ledwith answered, admitting he was duly appointed guardian, and that he represented Hall as an attorney in the county court, and denied all other allegations.

There was a general finding for defendants and dismissal by the county court, and an appeal taken to the district court, where the issues were separated, the questions of jurisdiction and fraud only being tried, and the question of competency reserved. The trial in the district court resulted in a general finding for defendants and dismissal of the suit, and plaintiff appeals.

1. Jurisdiction. It does not appear to us that there

was ever any serious question as to the jurisdiction of the county court of Lancaster county. As above stated, immediately upon his marriage plaintiff went to live at his wife's residence in Lincoln, January 4, 1928, and has resided there ever since, making only occasional visits to his old homestead, and plaintiff testified to those facts although he claimed to be a resident of Cass county and never intended to change that residence. Moreover he registered and voted as a resident of Lancaster county. The question of jurisdiction may therefore be dismissed without further consideration.

2. Fraud. Let it be observed that we are not called upon to determine the competency of plaintiff to care for his property and transact business; the county court having jurisdiction and no appeal having been taken from its judgment, for present purposes it must be presumed that it acted upon sufficient evidence, though it must be remembered that no evidence was offered on behalf of the supposed incompetent. The only charge of fraud connected in any way with the children or their attorneys has reference to the stipulation as to residence of the plaintiff and the form of the decree. As to the former, we have seen that there was no real question of jurisdiction, and that the stipulation was in accordance with the fact; as to the latter, plaintiff's only complaint seems to be that he was not furnished with a copy of the decree nor consulted as to its form. It may be stated with full confidence that there is an entire absence of any evidence warranting an inference that the petitioners or their attorneys connived in any degree with defendant's attorney Ledwith; neither is there any suggestion impugning the good faith of the county judge or his conscientious performance of his duties.

The case, therefore, rests solely upon charges of fraud against plaintiff's attorney Ledwith, which are stated to be his failure to introduce any evidence in opposition to the appointment of a guardian, his failure to advise plaintiff that the appointment could only be based upon a finding

of incompetency, his procuring the written consent of plaintiff to his appointment as guardian, his signing a stipulation as to plaintiff's residence, his advising plaintiff to make a will in which the trust company, of which Ledwith was the attorney, was named as executor, his representation that the guardianship was a mere matter of form and that he would handle the property as plaintiff wished, that Ledwith and Matson overcharged plaintiff for their services in the guardianship proceedings, and that he failed to advise plaintiff that he had a right to appeal.

Assuming, as plaintiff claims, that he was at all times competent in every way, we are forced to the conclusion from a careful consideration of the evidence on the point that he knew that he was charged with incompetency and that the appointment of a guardian had its dependence upon that fact. He read the copy of the petition served upon him with the notice, he employed defendant Ledwith to contest the application, and was present in court when the judge announced that he would find him incompetent and appoint a guardian of his choosing, if qualified. We also think it is established that Ledwith and Matson, on the evening before the appointment of a guardian, advised the plaintiff that the court would find him incompetent and make the appointment; also that plaintiff understood what he was doing when he signed the written nomination of Ledwith as guardian. It does not necessarily follow that because the plaintiff, on account of his age, appearance and testimony before the county court, was found incompetent to transact business and properly take care of his property and that a guardian should be appointed, he was unable to understand and appreciate the effect of his actions above referred to. We must confess that careful consideration and study of plaintiff's testimony given in this case furnishes little if any ground for an inference of incompetency; on the contrary, his answers to questions, though sometimes contradictory, are direct and to the point, as much so as those of any ordinary witness in the trial of a case. It further appears from the evidence that he was not averse

to having some one appointed to take care of his property, but he talked of a supervisor or power of attorney, and the gravamen of his complaint at this time is the finding of the county court that he was incompetent, which he seems to consider equal to a finding that he was crazy or insane.

He produces no evidence of mismanagement of his estate by the guardian and makes only two complaints in that regard, one that the guardian leased 80 acres in Cass county to plaintiff's son instead of an old friend of the plaintiff, and that the guardian had paid some $600 in taxes which he claims should have been paid by some of his sons, lessees upon his farms. These matters have to do only with the management of the estate and do not touch the question of fraud. In answer to a question whether he knew of a single fraud that Mr. Ledwith had perpetrated upon him, he answered: "I have never claimed that he committed a fraud. No, sir. That haint my contention now." And in answer to the question, "Now, what objection do you have against Mr. Ledwith?" he answered, "Nothing. I have nothing against the man, only he haint a business man and he don't carry on property the way it should to be of any benefit to me at all. He don't understand stock and he didn't know nothing about stock after I had invoiced the stock. And he don't know who had any apparently, and he didn't know what was cattle or hogs or horses, whether they was or not. He didn't know a hog from a horse, I don't think." He gave much more testimony to the same effect, but offered no instances of mismanagement. The irresistible conclusion from his testimony is that he does not like the finding of the county court that he was incompetent to transact business and care for his property, and wants to have it wiped out and have the management of his property returned to himself; that his attorneys did not properly defend the application and had misled him into consenting to the appointment of a guardian.

The only method by which the present desires of plaintiff may be accomplished is by a suit in equity such as this to set aside the decree of the county court as having been

obtained by fraud, actual or constructive, and as it happens here, the only persons, if any, guilty of fraud are his attorneys in the guardianship proceedings.

Plaintiff's attorneys in their brief frankly state their position in the following language: "We desire to be perfectly fair to Mr. Ledwith, and do not question but that he was, in his own mind, fully justified and felt conscientious in doing what he did. But if what he did was not justified under the strict and rigorous standards to be strictly applied to fiduciaries then it matters not if he mistakenly considered that his standards were as high as those the law requires. In many other trusts and fiduciary relationships, as well as those of guardian and ward and attorney and client, it is absolutely forbidden by law for the fiduciary to take action where his interest is adverse to that of his client, ward or beneficiary of the trust." We greatly appreciate the conscientious attitude of counsel which dictated the above statement; therefore, in further consideration of this case, we take it as conceded that no charge of intentional fraud or misconduct is made against Mr. Ledwith, and that the claim of plaintiff rests upon the proper legal deductions to be made from the facts disclosed by the evidence.

Although there may be some contradictory testimony in the record, the facts upon which our judgment must rest are practically without dispute and present to our view the following picture:

Plaintiff was an old gentleman of 79 years; he had been a farmer for over 60 years, and by hard work, the assistance of his wife and children, frugality, and by the wise investment of his surplus funds, had acquired an estate of the value of about $250,000. In 1926 his wife died, and about two years later, January 4, 1928, he married a widow lady about 68 years of age and removed from the old homestead in Cass county to Lincoln, Lancaster county, and has lived there ever since in a house belonging to his wife. February 23, 1928, a petition was filed by his nine children to have him declared incompetent, and for the appointment

of a guardian, a copy of which petition was served upon the plaintiff with the customary notice. Shortly thereafter, upon the recommendation of his step-son, he employed the defendant, John J. Ledwith, as his attorney, to contest said proceedings, and afterwards Mr. Charles E. Matson was joined as associate counsel. His attorneys took no steps to procure evidence as to the mental competency of plaintiff, but took an inventory of his estate and made provision for the safe-keeping of his securities. Prior to the hearing in the county court, plaintiff's deposition was taken at the instigation of the children, in the presence of two doctors and plaintiff's attorneys. Many consultations were had by plaintiff and his attorneys, and the latter came to the conclusion that their client was incompetent and that a guardian should be appointed. April 16, 1928, the matter came up for hearing in the county court. Plaintiff was called as a witness by the petitioners, was not cross-examined by his attorneys, and no witnesses were called by them. The session, lasting two or three hours, was adjourned until 10 o'clock the next morning. That evening a consultation was had by plaintiff and his attorneys. The attorneys testified that plaintiff declared that he would not go back to court and testify any further. It seems that the attorneys did not inform plaintiff of their opinion as to his competency, but they did advise him that the court would probably find him incompetent and appoint a guardian, and that plaintiff would have a right to name the guardian, and plaintiff said he wanted Mr. Ledwith. Thereupon a written request for the appointment of Ledwith as guardian was prepared and signed for plaintiff by his attorneys and contained the following: "That in order to avoid the disagreeableness of litigation and expense that will necessarily be incurred, requests the court to appoint as guardian of his estate and property, both real and personal, John J. Ledwith of Lincoln, Nebraska." It was then, at that time, suggested by Ledwith and Matson that the fees for their services in the guardianship matter should be determined, and named the amount of $7,500, to which the plaintiff agreed. The follow-

ing morning, the parties and attorneys being in court, the county judge, without further evidence, announced that he would find plaintiff incompetent and appoint Ledwith guardian, having asked plaintiff his preference in that regard. On the same day decree was entered, and very shortly Ledwith qualified as guardian, giving a bond in the sum of $100,000.

April 23, 1928, Ledwith advised Hall to make a will, which he did, disposing of his property in the same manner that the statute would have distributed it in case of intestacy, and appointed the Federal Trust Company of Lincoln, executor. Plaintiff's step-son, Fowler, was an officer of the trust company and Ledwith was its attorney.

Management of the estate by the guardian proceeded without protest for over a year, when some minor disputes arose, as elsewhere stated. This action was brought about a year and ten months after the decree of the county court, and the question for our determination is whether the facts above related are sufficient to require setting aside the judgment of the county court on the ground of fraud or under any other recognized head of equity jurisprudence. The suit is not brought under the statute, section 20-2001, Comp. St. 1929, "for fraud practiced by the successful party in obtaining the judgment or order," but appeal is made to the general powers of a court of equity. The statute is not exclusive but declaratory of the equitable powers of the court at the time of its enactment. *In re Estate of Kelly,* 103 Neb. 513; *Kulhanek v. Kulhanek,* 106 Neb. 595.

A number of cases are cited by appellee to the point that fault or fraud upon the part of plaintiff's attorneys is not ground to vacate a judgment after the term at which it was rendered, in the absence of participation by the successful party, among them *Kulhanek v. Kulhanek,* 106 Neb. 595, *Brandeen v. Beale,* 117 Neb. 291, and *Funk v. Kansas Mfg. Co.,* 53 Neb. 450, and therefore the general proposition may be considered as established law in this jurisdiction. From this premise it is argued that, inasmuch as no claim is made of participation by the children in the

supposed fraud, the action cannot be maintained. All but two of the cases cited were of an adversary character and are based upon the reasoning that one in whose favor a judgment had been rendered may not be deprived of its benefits by the fraud or neglect of opposing attorneys to which he has not contributed. One of the exceptions referred to is the case of *McCormick v. McCormick,* 109 Ia. 700. That was a petition, under a statute providing that a judgment might be vacated after the term for fraud of the successful party in obtaining same, or for inevitable casualty or misfortune preventing the party from defending, to set aside a decree finding the plaintiff incompetent and appointing a guardian on the ground of fraud practiced by the successful party in procuring said judgment. The charge of fraud was against the petitioner and another for conspiring to obtain the decree, plaintiff claiming to have been misled by her counsel and others into not making a defense, and relief was denied for failure of proof of any fraud; that the mere failure of the attorney to interpose a valid defense to the application was not sufficient to warrant the vacation of the judgment; the attorney received no financial benefit from the decree, no charge of fraud was made against the attorney, and no question arising out of the fiduciary relation existing between attorney and client was involved. In discussing the other ground urged for setting aside the judgment—unavoidable casualty or misfortune preventing plaintiff from defending—it was said: "Again, fraud and negligence of an attorney in not interposing a valid defense is not ground for vacating a judgment and granting a new trial"—citing *Jones v. Leech,* 46 Ia. 186; *Jackson v. Gould,* 96 Ia. 488. But these cases were both ordinary actions to which the principle was clearly applicable. The second exception, *Brandeen v. Beale,* 117 Neb. 291, will be referred to later.

It seems to us, however, that there is a distinction between the case we are considering and those of an adversary character where the enforcement of the rule is requisite to protect the rights of the litigants. A petition

for the appointment of guardian for an incompetent is not a civil action but a special proceeding. 28 C. J. 1082; *Lawrence v. Thomas,* 84 Ia. 362. It is not an adversary proceeding. *Huffman v. Beamer,* 198 Ia. 1113. "The situation in a guardianship proceeding is, of course, anomalous, for in one sense there are not two antagonistic sides to it. The person who by petition arouses the jurisdiction and duty of the county court may have nothing inimical in sentiment or interest to the alleged incompetent. He may be actuated purely by a desire * * * to protect the public at large. Nevertheless, he, by his own volition, assumes an attitude of practical antagonism to the freedom of the other, however benevolent his motives;" this for the purpose of service of notice of appeal on the "adverse party." *In re Guardianship of Welch,* 108 Wis. 387. The term "adverse" involves element of hostility under claim of title. 2 C. J. 35. The petitioners, as heirs of the defendant have no property rights to be protected, but the proceeding is one for the benefit and protection of defendant and the preservation of the estate. The reason of the rule fails when its application is sought to a proceeding of this character. The petitioners obtained a decree of incompetency and the appointment of a guardian, and while they have accomplished their desire in the matter, they cannot be accurately described as the successful party because they had no interest to protect and received no benefit for themselves; the real successful party is the incompetent whose property is thus preserved from his own inconsiderate acts and the inroads of designing persons. True, in *Brandeen v. Beale,* 117 Neb. 291, it was held that an application to set aside a judgment "for fraud practiced by the successful party in obtaining the judgment" applies to a proceeding of this character, and that the petitioner might be treated as the "successful party," but in that case fraud was charged against the petitioner and the action failed by the application of the special statute of limitations. In a proceeding based upon the statute, the party obtaining the order complained of may be treated as the successful party, but where the pro-

ceeding is based upon an independent ground of equitable jurisdiction other elements may control the definition. We are therefore of opinion that the rule contended for should not be applied strictly to the present situation, especially in a proceeding not based exclusively on the statute.

The contention of plaintiff is that, by reason of the confidential relations between himself and his attorneys, and his reliance upon their advice, in ignorance of the fact that in order to have a guardian appointed a finding was necessary that plaintiff was incompetent, he was prevented from contesting that question before the county court and induced to consent to the appointment of his attorney as guardian, as the result of which the attorney secured a very large fee, a position as guardian which would pay him about $1,000 a year, and probable employment later on as attorney for the trust company in the management of his estate after the death of plaintiff.

We, therefore, have a case where the attorney conscientiously concluded that any defense against the petition would be of no avail and therefore presented none, but who secured or accepted for himself, as a consequence or result of the decree, considerable financial benefit. Are these facts of such a character that a court of equity should take cognizance of them and interpose its remedial arm to prevent injustice? In *Berman v. Coakley*, 243 Mass. 348, it was said: "The relation of attorney and client * * * is highly fiduciary in its nature. The attorney is not permitted by the law to take any advantage of his client. * * * The defendant is alleged to have received large sums of money from the plaintiff. * * * That circumstance, together with the existence of the trust relation * * * arising out of that relation * * * is enough to warrant the interposition of equity to adjust the relation between the parties. * * * The existence of the trust relation goes far toward justifying relief in equity for abuse of the confidence thus reposed in respect to financial transactions." That was an action against the attorney for an accounting, but the statement is a correct exposition of the relations between attorney

and client. See, also, *Hamilton v. Allen*, 86 Neb. 401; *Schneider v. Lobingier*, 82 Neb. 174.

And the presumption is not met or defeated by the fact that the attorney acted in the utmost good faith and according to his best judgment. *Raimondi v. Bianchi*, 100 N. J. Eq. 448, citing *Dunn v. Dunn*, 42 N. J. Eq. 431. That was a suit to set aside a transaction between attorney and client and to charge the attorney with profits made therein, and the court said (p. 436) : "And it does not follow that in any such case the act or advice of the counsel may be dishonest or fradulent—not in the least, for the law does not proceed on such basis at all, since, if the act be either fraudulent or dishonest, the remedy therefor is abundant and proceeds on totally different grounds; but, in such cases as the present one is claimed to be, the courts administer relief because of undue influence, that influence which blinds, misleads and prevents all further inquiry. * * * In other words, public policy sets its face against such things." And again (p. 438) : "As I have said above, it is not on the ground of actual fraud that courts interfere, but simply because of the fiduciary relation that is shown to have existed, and it not being made to appear that the transaction * * * was perfectly fair and just. Weeks, in his work on Attorneys at Law, says: 'The rule is on the ground of public policy, not of fraud, and prevails although the attorney may be innocent of any intention to deceive, and act in good faith.' "

We are of the opinion that the fee of $7,500 charged by plaintiff's attorneys and paid by plaintiff is greatly excessive, and the suggestion of appellee Ledwith that whether or not such charge was reasonable cannot be an issue in this case but will be met at the proper time and place is inadmissible in our opinion, in view of the time and circumstances surrounding its settlement. If plaintiff was incompetent as the attorneys thought, clearly he would not be bound by the agreement; if competent, it being a transaction between attorney and client, it is a proper subject of inquiry by a court of equity whether or not it was fair

and reasonable. Moreover, we are unable to say what effect, if any, the agreement for so large a fee may have had upon the judgment of the attorney as to the propriety or necessity of making a defense in the county court.

Notwithstanding the above criticism of counsel regarding the amount of their fee or the other dealings of the plaintiff with defendant Ledwith, we do not wish to be understood as holding that the attorneys were guilty of any intentional fraud; in fact, they are gentlemen of very high reputation, both as to legal ability and character. What we do hold is, that plaintiff had a legal right to have a defense made on the question of his competency, and conceding that the attorneys acted in the best of faith in failing to make such defense, having reached the conclusion that it would be useless, nevertheless plaintiff was misled by their advice, and is without remedy unless it is afforded by a court of equity. An action against the attorneys for a reexamination of the reasonableness of their charge is not adequate, as plaintiff would still be, under the decree, an incompetent. The situation presents a case of constructive fraud growing out of the confidential relation of attorney and client. The only person having a legal interest is the plaintiff (*Timonds v. Hunter,* 169 Ia. 608) whose right to possession and control of his property has been taken away without his having an untramelled opportunity to be heard. The children, as above noted, have no rights to be protected by the decree attacked, and have no standing in court to object to the relief prayed for by plaintiff; no one can be wronged by granting of plenary remedy to him. *Timonds v. Hunter, supra.*

The situation of plaintiff is well pictured by Evans, J., in *Huffman v. Beamer,* 198 Ia. 1113: "The premature quarrels of expectant heirs are thrust upon the natural repose due to old age, and often result in despoiling the common benefactor and in destroying his status, and in depriving him of the liberty to do as he will with his own, and in compelling him to eat his own substance out of a stranger's hand."

We conclude that the judgment of the district court is erroneous and the same is reversed, with directions to try and determine the question of competency of plaintiff, and, if found incompetent, render judgment dismissing the action; if found competent, to enter judgment for plaintiff vacating the judgment of the county court dated April 17, 1928, and remanding the case to the county court, with instructions to make final settlement of the guardian's account, discharge the guardian and order the return of the property in his possession to plaintiff.

REVERSED.