In re Estate of Bridget A. Kelly.
George T. Kelly, appellee, v. Thomas J. Kelly et al.,
appellants.

Filed May 3, 1919. No. 20466.

Wills: Probate: Notice. In getting service upon heirs and all interested parties in the probate of a will, it will be sufficient to give the county judge plenary jurisdiction if he "shall cause public notice thereof to be given by personal service on all persons interested, or by publication under an order of such court, in such newspaper printed in this state as the judge shall direct." Rev. St. 1913, sec. 1303.

Appeal from the district court for Lancaster county: Willard E. Stewart, Judge. Reversed.

Field, Ricketts & Ricketts, for appellants.

Berge & McCarty, contra.

Aldrich, J.

On August 25, 1913, Bridget A. Kelly made a last will and testament bequeathing all of her property to her then living children. The names of the children who were objects of her bounty, and the parties to this case are as follows: William Kelly, aged 49 years; Thomas Kelly, aged 39 years; George T. Kelly (appellee herein) aged 36 years; Mary Josephine Dawson (afterwards known as Mary Josephine Gilbert) aged 40 years; Margaret Kelly Harr, aged 38; Alice Kelly Clare, aged 34. These children comprise the family of the testatrix, and it is to determine the validity of the last will and testament of the deceased testatrix that this action is brought. It is claimed on the part of the appellee that the instrument probated in the county court was not the last will and testament of deceased; that the same had been written

and the signature of the deceased secured on August 25, 1913, at which time, and for many months prior thereto, the said Bridget A. Kelly was suffering from paralysis, etc. It appears from the record that Bridget A. Kelly had had a stroke of paralysis at the time she made the purported will on August 25, 1913. That she was in a weakened mental and physical condition appears to be true. Afterward a settlement was had among the children named and provided for in the alleged will, and all participated in this settlement with the exception of George T. Kelly. The settlement was had and entered into, and all agreed with one exception, as above stated, that the will should be probated and the following distribution should be had: To George T. Kelly, cash, $10; to Margaret Harr, cash, $2,250 and one-half of lot 7, block 2; to Alice Clare, cash, 2,250 and one-half of lot 7, block 2; to William Kelly $1,000, and an undivided half of lots 8 and 9, $1,250, total, $2,250; to Thomas Kelly, cash, $1,000, an undivided half of lots 8 and 9, $1,250, lot 8, block 2, $2,500, total 4,750; to Mary Josephine Gilbert, lot 7, block 22, $6,000, household goods and furniture, $250, residue of personal property, subject to debts, $7,390, total, $13,640.

It will be noted that in this distribution, under the will, George T. Kelly, contestant and plaintiff herein, received $10. Under the settlement finally agreed to between the heirs above mentioned, the will of Bridget A. Kelly was duly probated; all proceedings had as by law provided; executors discharged, and the proceedings in the settlement of the estate according to the provisions of the will were had entire. Then the absent son, George T. Kelly, comes back from California, where he had been residing for a year or more, and asks to have the probate of said will set aside, and the entire proceedings gone into again for the reasons heretofore set out. A trial was had, and the proceedings were dismissed, and plaintiff ap-

peals to the district court, where trial was had and the finding made for the plaintiff, George T. Kelly. The other children (defendants herein) appealed from the decision of the district court to the supreme court, and we are now called upon to determine the issue, Was this will in question the last will and testament of the deceased testatrix? Was she of sound mind and disposing memory at the time this instrument in issue was executed? And did the county court have jurisdiction in the premises? Was the service by publication sufficient notice for the court to acquire jurisdiction to proceed to probate the will?

The will of the deceased testatrix as probated in the first instance does not make any other or different provision for the plaintiff, George T. Kelly, than was made for him in the settlement between the other heirs. Really, the one issue that is decisive of this case, and beyond which we do not have to go, is, Was there service, as required by statute, made on the absent heir, George T. Kelly, who at the time of his mother's death was residing somewhere in California?

In probating a will, and in giving notice of such proceedings, the service is usually constructive. The provisions of the statute under which we are proceeding make it optional with the probate judge to get personal service by publication. The almost universal rule in this state in probate proceedings is to get service by publication in any legal newspaper printed in the county which the judge may select. This is a matter of precaution and of general interest to all parties concerned, for the reason that personal service only reaches the person served, and the statute requires that all parties claiming an interest, or interested parties, shall be served with a notice to appear at the proceedings in probate, and it is impossible for a judge, or the heirs, to know all interested parties, and so it is unsafe to depend upon personal service, in this kind of a legal proceeding, and therefore it

is necessary to notify every one who might be interested, however small their interest may be. The safe thing is to get service by publication, and that operates to the same extent and is equally authoritative in giving to the court plenary jurisdiction upon every person who might be interested. The interest may be confined to heirs, devisees or legatees, or it may extend to others unknown to the county judge and to the petitioner.

Personal service jurisdiction would not be had unless the interested party was personally served, and by giving notice by publication this danger is avoided. In the instant case, the plaintiff claims that he never had any actual knowledge, or notice, of his mother's death, or of the hearing of the probate of her last will and testament, and therefore the court at that time (which is the position of the plaintiff) had no jurisdiction to hear and determine whether or not the probated will and testament was the last will and testament of the deceased testatrix. It is claimed that it was not her will, and that the court had never obtained jurisdiction over the plaintiff, and that the admitting of the will to probate, because of alleged defective service, gave to the court no jurisdiction to try and determine the issue here involved.

This identical question was before this court in the case of *In re Estate of Sieker,* 89 Neb. 216. Also this court has quoted with approval 2 Black, Judgments (2d ed.) sec. 635, the following: ''The action of a probate court having jurisdiction, in admitting a will to probate or in rejecting it, is in the nature of a proceeding *in rem,* and so long as it remains in force, it is conclusive as to the due execution and the validity of the will, both upon all the parties who may be before the court and upon all other persons whatever, in all proceedings arising out of the will or where the parties claim under or are connected with it.''

The supreme court of Vermont said: "The proceeding is, in form and substance, upon the will itself. No process is issued against any one; but all persons interested in determining the state, or condition, of the instrument are constructively notified, by a newspaper publication, to appear and contest the probate; and the judgment is, not that this or that person shall pay a sum of money, or do any particular act, but that the instrument is, or is not, the will of the testator. * * * The judgment is upon the thing itself, and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world (at least so far as the property of the testator within the state is concerned), just what the judgment declares it to be." *Woodruff v. Taylor,* 20 Vt. 65.

The statute under which we are proceeding is the decedent law of this state, and the procedure is different from that of ordinary civil actions as provided for in the Code of Civil Procedure. So it appears to us that, as a matter of law, the county court having fully complied with all the requirements of the decedent law of this state in the matter of probate of a will, and having plenary jurisdiction to probate the will in question and to distribute the property under the plain provisions of this document as signed and executed by the deceased testatrix, August 25, 1913, makes the proceeding in probate valid. To sustain the judgment and decree of the district court would simply overturn a uniform procedure in determining the rights of parties to real estate in the probate of a will.

The procedure taken, then, in this case at the time the will was first probated were proper statutory steps, and having jurisdiction over all the defendants at the time, and having acquired jurisdiction of the plaintiff by publication, and of other interested parties, as by statute of this state provided in such cases, it fol-

lows that the proceedings were regular and legal, and should not be disturbed.

We have carefully examined the record in this case and fully investigated the briefs and the many authorities cited, and we come to the conclusion, after full investigation, that the provisions of the Code of Civil Procedure cited by plaintiff cannot be followed; that the publication of the notice in this case was such as is contemplated by the decedent statute, and the order of the county court directing the publication was sufficient authority and gave it ample jurisdiction to proceed in probate as of and for the last will and testament of the testatrix. All of the heirs to this estate stipulated by and between themselves (with the exception of the plaintiff) to withdraw objection to the receiving of this will in probate, and to take their share in accordance with the terms and provisions of the will, and of the settlement entered into; and under these terms and conditions, the court, having full jurisdiction in the premises, settled the matter by distributing the property, and the executrix and the executor were discharged; and if the court had jurisdiction to hear and determine these matters and to make necessary orders to distribute and divide this property among the heirs at law in accordance with the terms and provisions of the will, then it follows that the question of fraud, or undue influence, and lack of testamentary capacity are immaterial, and were in effect passed upon by the court in admitting the will to probate, for it was the judgment in the probate proceedings that the testatrix had testamentary capacity; that she knew and remembered her relations, and obligations to her children, and determined for herself what share each one should have in the distribution of the estate. And the county court having jurisdiction to hear and determine this matter, it follows that the judgment and decree of the district court must be reversed and remanded in accordance with this opinion, and the

probate of the will and the distribution of property thereunder made by the county judge must stand as of. and for the last will and testament of Bridget A. Kelly, testatrix herein.

REVERSED AND REMANDED.

LETTON, J., not sitting.

ROSE, J., dissents.

CORNISH, J., concurring.

I have concurred in this opinion. I have not considered the law to be, nor have I considered the opinion to hold, that an heir cannot invoke the provisions of the Code (Rev. St. 1913, sec. 8207) for the purpose of having vacated the judgments or final orders of the county court in probate proceedings.

SEDGWICK, J., dissenting.

The syllabus is perhaps indefinite, but the opinion says: "We come to the conclusion after full investigation that the provisions of the Cole of Civil Procedure (Rev. St. 1913, sec. 8207), cited by plaintiff, cannot be followed." "Really the one issue that is decisive of this case, and beyond which we do not have to go, is: Was there service, as required by statute, made on the absent heir?" "The safe thing is to get service by publication, and that operates to the same extent and is equally authoritative in giving to the court plenary jurisdiction upon every person who might be interested." And the opinion of the majority, though in some respects perhaps indefinite, is written and the case decided upon that proposition.

Section 8215, Rev. St. 1913, provides: "The provisions of this chapter shall apply to the supreme court and county court, so far as the same may be applicable to the judgments or final orders of such courts." This section was enacted prior to the adoption of the present Constitution, and section 15, art.

XVI of the Constitution, makes county courts the successors of probate courts. *Martin v. Grover*, 9 Neb. 263. In *Oakdale Heat & Light Co. v. Seymour*, 78 Neb. 50, it is said: "This makes the provisions of section 602 of the Code applicable to probate courts, and also the following sections which prescribe the practice to be pursued in the court in which it is sought to vacate or modify judgments and orders." And so there can be no question that the county court has jurisdiction to vacate its judgments after the term under sections 8207 and 8215, Rev. St. 1913. In *Western Assurance Co. v. Klein*, 48 Neb. 904, it is said: "If these provisions of the Code did not exist, still the district courts of the state, in the exercise of their general equity powers, might, in a proper case and on sufficient grounds, set aside a judgment after the term at which it was rendered." There is no reason, in the nature of things, why this provision of the Code should not apply to probate proceedings as well as to any other proceedings where service is had by publication only. The case of *In re Estate of Sieker*, 89 Neb. 216, which seems to be relied upon in the majority opinion, involves only the question whether service by publication is *prima facie* sufficient, and does not determine or consider whether section 8207, Rev. St. 1913, applies, and holds that such service, "so long as it remains in force," is valid. These words are a plain indication that it may not remain in force, and it will not if under section 8207, Rev. St. 1913, it ought to be set aside.

The record in this case is not properly represented in the statement that "all of the heirs to this estate stipulated by and between themselves (with the exception of the plaintiff) to withdraw objection to the receiving of this will in probate and to take their share in accordance with the terms and provisions of the will." Under this fraudulent agreement of settlement,

without the knowledge of this contestant, none of the parties to the stipulation took a "share in accordance with the terms and provisions of the will." The daughter, who was accused of obtaining this will by undue means, took, by this settlement, about one-third less than the alleged will gave her, and every other of the parties to the stipulation received by the settlement substantially more than the alleged will provided, so that this stipulation of settlement is a confession that the will was not genuine. And the county court did not distribute the estate according to the provisions of any will, but only as stipulated by the interested parties who benefitted thereby, and without the consent or knowledge of this appellee.

This appellee was in California at the time of his mother's last illness and death, and did not learn of her decease until the last part of December, 1914. In October, 1915, he filed this petition to set aside the probate of the will. Even if he had notice of this order which was entered in November, 1914, he would have 2 years' time in which to make application to set aside this order under subdivisions 4 and 7 of section 8207, Rev. St. 1913, and 3 years' time under subdivision 3. When the appellee heard of his mother's death, which occurred in January, 1914, he immediately wrote to his sister, Mrs. Harr, in regard to his interest in the estate, also to his brother Thomas Kelly, and to the attorney who was interested in having the will probated. The deceased had made a former will in which she gave this appellee a substantial interest in her property. The will in question was made in August, 1913. The deceased was then 75 years of age and was suffering from paralysis. She was living with her son, Thomas Kelly, and her daughter, Mary Josephine Gilbert. When the will in question was offered for probate, it was found to give a large portion of the estate to the said Mary Josephine Gilbert; and two children

of deceased, Margaret Harr and Alice Clare, filed objections to the probate of the will, alleging that it was not the will of the deceased; that her signature was obtained by fraud, duress, and intimidation on the part of Mrs. Gilbert and Thomas Kelly; and in making these objections, without the consent of or any notice to this appellee, they included his name as one of the objectors. The appellee knew nothing of their action in this regard. Without any hearing upon these objections, the stipulation of settlement was filed, in which it was recited that appellee was a party to the stipulation, and that they would allow the will to be probated, and the terms of the will were entirely disregarded by the parties in the distribution of the estate, and the estate was divided according to the stipulation, giving appellee $10, and all the heirs, except Mary Josephine and Thomas, who it is alleged in fact made this will, much larger shares in the property than the will stipulated, and giving the said proponents of the will a very much smaller portion; thus perpetrating a manifest fraud upon the court in making it appear that this appellee was one of the objectors and consented to this distribution of the property. "It was decided by the supreme court of Alabama that, where the principal legatee had occupied a confidential relation to testator, the burden is on him to show the absence of the exercise of undue influence. *Moore v. Spier*, 80 Ala. 129." *In re Estate of Johnson*, 100 Neb. 791.

The concealment of a material fact by a brother or sister which results in his or her advantage in excluding another brother is a constructive fraud. All these parties knew that this appellee had no notice of this attempted probate of the will, and had no notice that it was represented to the court that he was connected with the proceedings when he was not, and had no notice of the settlement and distribution of the prop-

erty by the stipulation; and instead of notifying him of his mother's death and the proceedings, as they had ample opportunity to do, they purposely kept knowledge of these facts from him.

The majority opinion is: "We are now called upon to determine the issue, Was this will in question the last will and testament of the deceased testatrix? Was she of sound mind and disposing memory at the time this instrument in issue was executed?" The statute requires that, before a judgment is set aside on these grounds, the court must find that there is good defense. But that is not the principal question for determination. "Before a plaintiff is entitled to have a judgment against him and an order overruling his motion for a new trial vacated at a succeeding term for irregularity, it must be adjudged by the court that he has a cause of action which is *prima facie* valid." *Gavin v. Reed,* 73 Neb. 237. The opinion cites the statute, and says: "This requires the court to adjudge that the cause of action is *prima facie* valid before it would be authorized to take any action upon the motion. *Gilbert v. Marrow,* 54 Neb. 77." It is not necessary that there should be a preponderance of the evidence upon that point. If it shows a *prima facie* defense, it is sufficient.

It seems to follow that (1) the county court and supreme court must grant a new trial under section 8207, Rev. St. 1913; (2) the admission of the alleged will to probate was procured by fraud; (3) the order of distribution was not under the will, but under the fraudulent stipulation; and (4) in the absence of any statutory authority, equity will set aside such order so obtained, and allow appellee to be heard.

It appears to me that the judgment of the district court is fully sustained by the evidence, and ought to be affirmed.

The following opinion on motion for rehearing was filed December 15, 1919.  *Rehearing denied.*

1. **County Court: Probate: Vacation: Fraud.** The county court has power to vacate a probate procured by fraud and to permit a contest of the will.

2. **Wills: Probate: Vacation.** A judgment of probate, entered upon a proper petition after legal notice, and not challenged for a year and a half, should not be vacated on doubtful or equivocal proofs on the issue of testator's incompetency or of undue influence.

3. ———: ———: ———: **Evidence.** Evidence on the issues of incompetency of testatrix and of undue influence in the making of a will *held* insufficient to sustain findings in favor of plaintiff on his petition to vacate the judgment of probate and to contest the will.

Rose, J.

This is a proceeding commenced in the county court by George T. Kelly, plaintiff, October 1, 1915, to set aside the probate of his mother's will and to contest it. She left him $10 only, and made substantial bequests to his brothers and sisters. The will was dated August 25, 1913. Testatrix died January 6, 1914. The decree of probate was entered March 17, 1914. One son, Thomas J. Kelly, was executor and one daughter, Mary Josephine Gilbert, was executrix. Their final report was approved and the estate, with the exception of plaintiff's share, was distributed November 17, 1914. They were discharged by order of the county court November 18, 1914. They are sued by plaintiff, both in their representative and individual capacity, and as defendants are joined with Margaret Kelly Harr, Alice Agnes Clare, and William Kelly. These defendants and plaintiff are the only children of testatrix. The grounds upon which plaintiff demands relief may be summarized as follows: He did not have actual notice or knowledge of his mother's death or of the offering of her will for probate. These facts were fraudulently concealed from him. The probate was procured by fraud. Testatrix was stricken with apoplexy October 1, 1912, and was not competent to make her will August 25, 1913. In at-

tempting to do so, she was unduly influenced by her daughter, Mary Josephine Gilbert, who alone lived with her mother. To the petition praying for relief on the grounds mentioned, there was an answer denying incompetency and undue influence, and containing pleas that plaintiff had due notice by publication, and that he was negligent in delaying his litigation. There was a trial in the county court. After considering the evidence, including that relating to incompetency and undue influence, the county court found that sufficient cause for granting plaintiff relief had not been shown, and the petition was dismissed. Plaintiff appealed to the district court, where there was another trial, but it resulted in a decree setting aside the probate and permitting a contest. From that decree proponents appealed to this court. In an opinion here published, notice of the presenting of the will for probate was held sufficient to give the county court jurisdiction,. and the decree of the district court was reversed. *In re Estate of Kelly, ante,* p. 513. On motion of plaintiff a reargument was granted. After a second hearing on appeal the case was again taken under advisement.

The power of the county court to set aside the probate is earnestly affirmed by plaintiff and vehemently controverted by proponents. The petition invoking the exercise of this power was filed after the judgment of probate had remained unchallenged for more than a year and a half. Plaintiff insists that the power of the county court to grant him relief is found in the statute authorizing the district court to vacate a judgment at a subsequent term for fraud practiced by the successful party in obtaining such judgment. Rev. St. 1913, sec. 8207. While this enactment by its terms applies to district courts, another provision in the same chapter declares:

"The provisions of this chapter shall apply to the supreme court and county court, so far as the same may be applicable to the judgments or final orders of such courts." Rev. St. 1913, sec. 8215.

To relieve innocent parties from judgments procured by the fraud of prevailing parties, county courts have long exercised the power granted by the statutes cited. Such authority was recognized in early decisions. In *Oakdale Heat & Light Co. v. Seymour,* 78 Neb. 47, reference is made to some of the former cases, and it is there held that the statutory power to grant relief from a judgment procured by fraud extends to the county court in the exercise of its probate jurisdiction. Adherence to this rule is unanimous.

Independently of statute, however, the county court has power to set aside a probate procured by fraud. For that purpose the equity powers of the county court as the court of exclusive original jurisdiction in probate matters are ample. *Genau v. Abbott,* 68 Neb. 117; *Youngson v. Bond,* 69 Neb. 356.

Should the county court have vacated the probate? For the purpose of obtaining such relief, plaintiff is required to make a *prima facie* case on the merits. In doing so the burden is on him to show that testatrix was incompetent, or that her will was the result of undue influence. If the evidence on the affirmative of these issues is insufficient, the probate should not be disturbed. It is incumbent on plaintiff to overthrow the presumption of regularity and validity raised by the judicial proceedings and records. In probate matters the county court is the court of original jurisdiction. A will valid on its face was presented to that court. It had been prepared and witnessed by an attorney of high standing and recognized integrity who knew testatrix, and her children. He afterwards made oath that testatrix was competent and free from coercion when she made her will. The will was also witnessed by another upright lawyer and by a reputable physician. Due notice that it had been offered for probate was given by publication pursuant to statute. A judgment probating it was formally entered on the records of the county court. Testimony adduced by plaintiff under his petition herein to prove incompetency and undue

influence was rejected by the county court as insufficient for that purpose. Under such circumstances the judgment, from which there was no appeal, should not be set aside at this late day on doubtful or equivocal proofs. There must be cogent reasons for opening judgments affecting titles and distributing estates. The testimony on behalf of plaintiff on these issues comes from two daughters of testatrix and is similar in character. It shows hostility and bitterness toward the sister who is charged with undue influence while living with her mother. This testimony was given after the witnesses had entered into a stipulation to allow the probate, and after they had accepted their distributive shares of their mother's estate under their stipulation, which did not increase the share of plaintiff beyond $10. The import of their testimony is that their mother was stricken with apoplexy October 1, 1912; that she failed rapidly thereafter, in body and mind; that her mind at times was blank; that she was not herself; that she could not converse intelligently; that she was constantly under the influence of the daughter who lived with her; that the latter told others of her purpose to influence her mother in the making of a will; that the daughter who lived with her mother excluded one of her sisters from her mother's home, and knew, but refused to disclose, the address of plaintiff, who was absent, and refused to notify him of his mother's condition, fatal illness and death. Other testimony from the same source, however, has a different import. Referring to a period beginning after the affliction of testatrix and extending almost to the time of her death, these same witnesses testify to incidents indicating that their mother at times had a clear perception of her relation and duty to plaintiff. Testimony of this nature tends to prove that the mother spoke of hearing from plaintiff; of his "getting along fine;" of her love for him; of her wish to do right by him and to leave him something. These sound like utterances prompted by a disposing mind. They were reproduced by a daughter who could have called at any time her

mother's attorney—a neighbor who passed the home of testatrix almost daily. There is no direct evidence that testatrix was incompetent or under duress at the time she made her will. The attorney who drew it made oath to the contrary. Circumstances disclose a reason for cutting plaintiff off with $10. Before leaving. home he had used intoxicants to excess. Thereafter he had been a wanderer along the Pacific coast. At a time when the competency of testatrix was not in question, she made a former will bequeathing for plaintiff's benefit $1,000, but the legacy was entrusted to the care of a sister. In the meantime this sister lived with and took care of her mother. Considering the evidence as a whole, it seems clear that plaintiff has not made a *prima facie* case.

The judgment of the district court is reversed and that of the county court affirmed.

JUDGMENT ACCORDINGLY.