168 So.2d 164 (1964)
STATE of Florida ex rel. Charles E. Booth, as Executor under the Last Will and Testament of Florence I. Herlan, Petitioner,
v.
Honorable John S. BYINGTON, as County Judge in and for Volusia County, Florida, Respondent.
No. F-454.
District Court of Appeal of Florida. First District.
October 26, 1964.
Rehearing Denied November 10, 1964.
*166 Douglass & Steinmeyer, Tallahassee, for petitioner.
Walter Shelley and Paul Raymond, Daytona Beach, for respondent.
STURGIS, Chief Judge
On the relation and petition of Charles E. Booth, as executor of the last will and testament of Florence I. Herlan, deceased, administration whereon is pending in the County Judge's Court in and for Volusia County, Florida, we issued a rule nisi to the Honorable John S. Byington, as judge of said court, requiring him to show cause why a peremptory writ of prohibition should not issue upon the suggestion of relator: (1) that certain orders entered by him of his own motion in the matter of the administration of the estate of said decedent exceeded the jurisdiction of said court; and (2) that his term of office as county judge has expired, thus disqualifying him to act as such in the premises.
The relator alleged, in substance: That he is the named residuary legatee and executor without bond of the will of said decedent; that the will was duly established and admitted to probate by the respondent on May 14, 1962, and letters testamentary issued to relator on that day; that on May 11, 1962, relator filed a sworn statement pursuant to Section 732.28, Florida Statutes, F.S.A., setting forth the names and addresses of all beneficiaries under the will, reciting that there were no known heirs of decedent, and requesting the court to issue and serve on all beneficiaries the citation and notice of probate contemplated by the statute; that the notice of probate was filed by the court on May 18, 1962, and the named beneficiaries were each served with a copy by certified mail; that the notice was also published according to law, and no objection to the probate was filed within the prescribed six months after publication. On the stated facts, relator suggested that by operation of law the probate of said will became conclusive.
Relator also alleged, in substance: That notice to creditors was duly published and their claims became barred on November 19, 1962; that all proofs of claims filed in the estate have been paid; that a full inventory of the assets of the estate has been filed (date not stated); that all estate and death taxes have been paid; that in accordance with Section 733.43, Florida Statutes, F.S.A., the relator, as residuary legatee, and all other beneficiaries have in writing waived the filing of an accounting and have "executed Waiver of Notice to Apply For Discharge and for Accounting"; that final distribution has been made by relator pursuant to Section 734.02, Florida Statutes, F.S.A.; and that all that remains to be done in said estate is to discharge the relator pursuant to a final accounting which he has prepared and filed with the probate court (date not stated).
Relator further alleged, in substance: That on June 15, 1964, the respondent of his own motion and without notice or hearing issued an "Order of Investigation and *167 to Account," directed to the relator, attacking "the validity of the decedent's Will and testamentary capacity," and prohibiting "the withdrawal of any funds from any bank in which assets of the estate were located";[1] and that on June 16, 1964, the respondent *168 of his own motion and without notice or hearing entered a "Rule to Show Cause", directed to the relator, why he "should not be adjudged in contempt."[2]
*169 We granted the relator leave to amend the suggestion for writ of prohibition by adding thereto a request that we prohibit the respondent from proceeding further in said proceedings involving the relator, and particularly from holding any hearings on said order of investigation, on the ground that respondent is disqualified "by automatic retirement" from acting as judge therein, and on the further ground that the probate of said will became final under the provisions of F.S. § 732.28, F.S.A., and the *170 rule announced by the Supreme Court of Florida in State ex rel. Ashby v. Haddock, 149 So.2d 552 (1962).
In answer to the rule nisi the respondent, by his attorneys of record, filed an elaborate return and an amendment thereto, much of which deals in polemics having no material bearing on the issues. In pertinent part it admitted all material allegations of fact as set out in the rule nisi, in which was incorporated the suggestion and petition of the relator; but respondent denied that he exceeded his jurisdiction by issuing the orders of June 15, 1964 (Order of Investigation and to Account), and order of June 16, 1964 (Rule to Show Cause), as amended by order of June 23, 1964, and denied that he was without jurisdiction or disqualified to hear and determine the matters set forth therein.
The parties submitted without argument all pending motions. Relator moved to strike portions of respondent's answer to the rule nisi and to strike entirely respondent's amendment to said answer. Said motions are granted.
The relator moved to strike portions of respondent's brief. Said motion is granted.
The respondent moved to strike the reply brief of the relator on the ground that the brief contains unsupported insinuations and allegations which are improper, undignified, offensive, scandalous, impertinent and beyond the scope of the record and issues in this proceeding, and to strike the revised proof of publication, belatedly filed by relator. The motion is denied. We deem it appropriate at this juncture to note that zeal of counsel has produced pleadings on the part of both sides to this controversy which are in part infested with irrelevant matter and occasionally with intemperate charges and countercharges of a personal character and so devoid of legal effect as not to benefit  much less influence  the court or serve the best interests of the litigants.
The relator's primary thrust is directed to the proposition that an identical question as here involved was squarely presented to the Florida Supreme Court in State ex rel. Ashby v. Haddock, supra, in which it was held that this court erred in declining to issue a writ of prohibition preventing a county judge from acting further on a petition for revocation of a will, which petition was filed after the running of the six-months statutory period under F.S. § 732.28, F.S.A. We do not think the facts in that case are parallel with or the decision determinative of the issues on this appeal. In Haddock there was no question of fraud or overreaching nor did it involve the inherent powers and duties of the county judge in the supervision and control of the administration of estates of decedents, as in the instant case.
Section 7(3), Article V, Constitution of Florida, F.S.A., confers jurisdiction on the County Judge's Court to settle the estates of decedents and minors and to discharge the duties usually pertaining to courts of probate. This has been construed to be "a broad grant of power" which "clothes the probate court with plenary power to adjudicate any matter arising in the `settlement' of a decedent's estate." In re Warner's Estate, 160 Fla. 460, 35 So.2d 296 (1948). As said in In re Monk's Estate, 155 Fla. 240, 19 So.2d 796 (1944):
"`Probate duties' contemplates the probation of wills, issuance of letters testamentary or administration, collection of debts, allowance or disallowance of claims, ordering the sale of real estate, approval of final accounts, distribution of the property of the estate, hearing testimony and ascertaining the heirs, legatees, distributees or beneficiaries entitled to receive the estate of a decedent, and the amounts and shares thereof. The County Judge's Court, generally speaking, has the exclusive power to do all things necessary in the settlement of an estate of a decedent from the probation of a will or the issuance *171 of letters of administration to the completion of the administration thereof and the entry of an order of discharge of the legal representative."
As to all matters within its cognizance, the County Judge's Court is a court of general jurisdiction. In re Niernsee's Estate, 147 Fla. 388, 2 So.2d 737 (1941). Its probate jurisdiction cannot properly be restricted by legislative enactment. See In re Straitz's Estate, 135 So.2d 239 (Fla. App.2d 1961), which holds:
"County Judge's Courts have jurisdiction to do all things reasonably related to the probate of wills and the settlement and administration of decedent's estate, except where a conflicting proposition exists by virtue of an express provision of the constitution."
The legislature has not imposed any limitation upon the broad constitutional grant of power to the County Judge's Court in probate matters. It has in fact re-enacted the substance of the constitutional provision (Sections 36.01(3) and 732.01, Florida Statutes, F.S.A.) and by Section 36.02, Florida Statutes, F.S.A., has clearly implemented the constitutional grant of jurisdiction by providing:
"36.02 General powers. County judge's courts shall be courts of record, and county judges shall have authority to make all orders or decrees, and to issue every and all process necessary to maintain and carry out their constitutional jurisdiction, or to enforce their authority, and to enter and enforce their judgments and decrees in all matters wherein they have jurisdiction."
The relator is an attorney at law. He represented the decedent in preparing the will which designates him as the primary beneficiary and executor without bond. In ordering relator to appear before him to account for and explain matters brought to the respondent's attention, as reflected by the challenged orders which indicate the existence of error in the admission to probate of decedent's will and maladministration upon her estate, Judge Byington was clearly acting within the proper confines of his office and discharging a constitutional duty "usually pertaining to courts of probate."
It was not error to issue the subject orders of the respondent's own motion and without notice to relator. Many transactions in the administration of estates permit such action on the part of the county judge, some of which are specifically provided for by statute. However, the absence of direct statutory authority upon the subject does not render the act extrajudicial. Among the statutory authorizations are: Sections 732.66, 733.43, 733.49, 733.50, 733.51, 734.13, and 734.22, Florida Statutes, F.S.A., which recognize the power of the county judge in particular instances of his own motion to issue orders in probate; and F.S. § 734.13, F.S.A., which permits him of his own motion to institute proceedings for removal of the personal representative. His power to revoke probate for good cause is no less broad. We are not here reviewing final action taken upon the mentioned orders, but simply the question of the county judge's official right to act as he did. Among the inherent powers of any court is the power to vacate its own orders, judgments and decrees. 8 Fla.Jur., Courts, Sec. 42.
The probate court has inherent power and jurisdiction to revoke probate decrees, notwithstanding that such decrees are considered to be in the nature of judgments in rem. That power may be exercised where justice clearly requires it, as where after probate of a will a later will or codicil is discovered, newly discovered evidence shows that the probated will was forged, or that its probate was procured by fraud. In such instances courts have inherent power over their own process to prevent abuse, oppression and injustice and to protect their own jurisdiction. Gale v. *172 Nickerson, 144 Mass. 415, 11 N.E. 714 (1887). See also Parsekian v. Oynoian, 299 Mass. 543, 13 N.E.2d 409, 115 A.L.R. 470 (1938); In re Campbell's Estate, 46 Wash.2d 292, 280 P.2d 686 (1955); Cousens v. Advent Church, 93 Me. 292, 45 A. 43 (1899); In re Penney's Estate, 225 Wis. 455, 274 N.W. 247 (1937); Hotchkiss v. Ladd's Estate, 62 Vt. 209, 19 A. 638 (1890); In re Blyman's Estate, 382 Ill. 520, 47 N.E.2d 710 (1943).
While it does not appear that any other jurisdiction has enacted a statute having the same provisions as Section 732.28, Florida Statutes, F.S.A., it is generally held that probate courts have inherent power to revoke probate of a will despite the expiration of appeal periods or other statutory periods of limitations. Merrill Trust Co. v. Hartford, 104 Me. 566, 72 A. 745 (1908); In re Kelly's Estate, 103 Neb. 513, 175 N.W. 653 (1919); Glenn v. Mitchell, 71 Colo. 394, 207 P. 84 (1922); Cowan v. Cowan, 133 W. Va. 115, 54 S.E.2d 34 (1949); Culbertson's Estate, 301 Pa. 438, 152 A. 540 (1930)
In Freasman v. Smith, 379 Ill. 79, 39 N.E.2d 367 (1942), the probate court appears to have been misled into entering a decree purporting to settle a will contest in which the language of the decree was deviously designed to bar the probate of another will of the decedent. After carefully reviewing the background of the case and the language of the decree, the appellate court termed the decree a "monstrosity" and stated as follows:
"When these provisions, from which its purposes clearly appear, were brought to the attention of the court in any manner, the court, for its own protection, and for the maintenance of its own proper dignity, should have set it aside on its own motion."
To the same effect see Succession of Desina, 135 La. 402, 65 So. 556 (1914), involving the probate of a will subsequently determined to be void under Louisiana law on account of the birth of a legitimate child of the testator after execution of the will. The court stated:
"We assume that the allegation of the subsequent birth of the child was not brought to the attention of the judge below, and that he signed the probate decree in ignorance of that fact. Having, through error and mistake, probated the void instrument as a will, it was the duty of the judge to have vacated the improvident decree, as soon as informed of the fact of the subsequent birth of the child. If the inferior court discover that an order given by it is erroneous, it may itself set it aside."
The probate of a will is a matter of public concern. The nature and character of probate proceedings are such that the power to revise their own decrees is essential to the safe and satisfactory administration of justice under the law in probate courts. The County Judge's Courts of this state possess inherent power to revoke their own probate decrees in cases of extrinsic fraud or mistake and the exercise of such power is one of the "duties usually pertaining to courts of probate" within the meaning of Section 7(3), Article V, Constitution of Florida, F.S.A.
The order admitting the within mentioned will to probate has not become conclusive through the operation of Section 732.28, Florida Statutes, F.S.A. The notice provided for by that statute is not intended to be directed to and to act upon the probate court itself which, having probated the will, had actual notice of its own action. It cannot be logically said that performing the ministerial act of issuing notice pursuant to the statute, the court thereby divested itself of jurisdiction to review an erroneous order based upon an erroneous premise.
The result and effect of the procedure are defined in subsection (6) of *173 F.S. § 732.28, F.S.A., which reads as follows:
"(6) If no petition for revocation of probate is filed within the time limited aforesaid, the order admitting such will to probate shall be conclusive without further order, upon proof of publication of notice of probate's being filed and recorded in the office of the county judge. No petition for revocation of probate may be maintained unless filed within said six-month period."
The meaning of these two sentences is clear. The first sentence defines the final conditions that must be met to give the statute its effect, and to mark the point in time at which such effect arises. Its import is that if no petition is filed within the limitation period, the procedure shall become effective without further order upon filing and recording proof of publication. The second sentence states what the effect thus achieved shall be. The general word "conclusive," appearing in the first sentence, has reference to and achieves its definition in the second sentence. This construction accords with common sense and the doctrines of noscitur a sociis and ejusdem generis. It cannot reasonably be supposed that the legislature intended by use of the word "conclusive" in the first sentence, to modify or enlarge the meaning of the specific words in the second sentence. Such an interpretation would squarely violate the well-established rule that statutes of this kind are to be strictly construed.
Other provisions of the probate act reveal that compliance with the provisions of F.S. § 732.28, F.S.A., does not render an order of probate "conclusive" in the absolute sense asserted by the relator. Section 732.32, Florida Statutes, 1963, F.S.A., for example, provides as follows:
"732.32 Discovery of later will. Upon the discovery, pending probate proceedings, of a later will or codicil expressly revoking the probated will or impliedly revoking the same in whole or in part, any person interested may by petition offer same for probate. The proceedings shall be, as nearly as practicable, similar to those for revocation of probate generally."
State ex rel. Ashby v. Haddock, supra, yields no support for relator's contentions. The opinion there deals exclusively with the problem of construing and reconciling Sections 732.28 and 732.30, Florida Statutes, F.S.A., both of which contemplate revocation of probate predicated upon a petition filed by an interested party. The court emphasized "the conclusive effect of notice of probate by mail or publication upon all interested parties under Sec. 732.28." (Emphasis added.) The effect upon the probate court was not discussed. It termed the second sentence of subsection (6) an "unambiguous statement." Nowhere does the court state or imply that the effect of F.S. § 732.28 is to work an absolute divestiture of the county judge's jurisdiction to review the order of probate under circumstances such as those of this case. All of the circumstances of the Haddock case indicate that the lack of jurisdiction found on the part of the county judge was wholly with reference to the petitioners' lack of proper standing to appear in court and that otherwise the court clearly had jurisdiction over the subject matter and the parties before him.
Admittedly the order binds and concludes the whole world  but only until it is revoked or otherwise overturned. It is one thing to define a limitations period in which interested parties must come forth with objections to a will offered for probate. The court, as well as the executor, may be assisted thereby in achieving expeditious settlement of the estate. It is quite another thing to say that such a procedure can strip the court itself of its authority to review its own order of probate where it later comes to the court's attention that the order may have been procured through fraud or mistake. The Florida legislature did not intend to provide those who prey upon unguarded *174 estates with so simple a device to shield their own wrongdoing and to afford themselves carefree enjoyment of their booty. The question asked by the court in State v. Lancaster, 119 Tenn. 638, 105 S.W. 858, 14 L.R.A.,N.S. 991 (1907), may also be asked here: "Since when has fraud attained the dignity of a legal defense?"
In the leading case of Waters v. Stickney, 12 Allen 1, 90 Am.Dec. 122 (Mass. 1866), the court said:
"By the practice of the English ecclesiastical courts, a will may be proved either in common form, ex parte, upon being presented by the executor; or in solemn form, after notice to all parties interested,  which last accords with our practice in all cases of probate of wills. * * *
"Even when a will is proved in solemn form, it is within the jurisdiction of the court, for sufficient cause shown, to revoke the probate. The English authorities recognize, as sufficient causes of revocation, forgery of the will, fraud in obtaining probate, neglect or mismanagement in conducting the suit, or the production of a later will."
* * * * * *
"In the face of these authorities it is impossible to deny the power of a court of probate to approve a subsequent will or codicil, after admitting to probate an earlier will by a decree the time of appealing from which has passed; or to correct errors arising out of fraud or mistake in its own decrees. This power does not make the decree of a court of probate less conclusive in any other court, or in any way impair the probate jurisdiction; but renders that jurisdiction more complete and effectual, and by enabling a court of probate to correct mistakes and supply defects in its own decrees, better entitles them to be deemed conclusive upon other courts. There is no reason to apprehend that such a power may be unjustly exercised. It is vested in the same court which is entrusted with the original jurisdiction over all probates and administrations. No decree admitting a later instrument to probate, or modifying or revoking a probate already granted, can be made without notice to all parties interested; every party aggrieved by the action of the probate court has the right of appeal to this court; and an application of this nature, when one will has already been proved, would never be granted except upon the clearest evidence. The new decree would not necessarily avoid payments made or acts done under the old decree while it remained unrevoked. * * *"
We adopt the principles there laid down as governing the procedure under the circumstances of this case.
We turn now to the question of whether peremptory writ of prohibition should issue to prevent the respondent county judge from performing any judicial function in respect to the within mentioned orders directed to the relator, Charles E. Booth, because of his alleged disqualification on the ground that at the time he issued said orders he had attained the age of 70 years and had automatically become retired as county judge under Section 17(1), Article V, Constitution of Florida, which provides:
"(1) All justices and judges shall automatically retire at age 70."
It is not contested that respondent was appointed to the office of county judge on December 29, 1958, and that his 70th birthday was November 22, 1963. It is obvious, therefore, that if by virtue of the constitution he became disqualified, immediately upon his 70th birthday, to perform de facto as well as de jure any judicial function in the subject estate, that disqualification is general in character and invalidates all other acts performed by him as county judge since that date.
*175 The writ of prohibition has a narrow scope of operation and may not be resorted to if other adequate remedies are available. As stated in Sherlock v. Mayor of Jacksonville, 17 Fla. 93 (1879):
"It is a principle of universal application, and one which lies at the very foundation of the law of prohibition, that the jurisdiction is strictly confined to cases where no other remedy exists, and it is always a sufficient reason for withholding the writ that the party aggrieved has another and complete remedy at law."
Quo warranto is an appropriate and adequate remedy to determine the right of an individual to hold a public office. See 27 Fla.Jur., Quo Warranto, Sec. 17, and cases there cited. Where quo warranto is an adequate remedy, it is the only proper remedy and will preclude issuance of a writ of prohibition as a substitute. McSween v. State Live Stock Sanitary Board, 97 Fla. 750, 122 So. 239, 65 A.L.R. 508 (1929); State ex rel. Attorney General v. Gleason, 12 Fla. 190 (1868); 74 C.J.S. Quo Warranto § 4.
Prohibition goes only to the question of the lower court's jurisdiction. It is available to prevent the exercise of jurisdiction where none exists and where the court exceeds its power. It is apparent here that even if the respondent as a county judge does fall within the automatic retirement provision of the Florida Constitution, such does not ipso facto impair the jurisdiction of his office or the validity of his exercise thereof. Affording relator's position its greatest possible effect, the respondent's status is changed only from that of a de jure judge to a de facto judge, which in no way impairs his jurisdiction. The official acts of a de facto judge are as valid as if he is an officer de jure. State ex rel. Hawthorne v. Wiseheart, 158 Fla. 267, 28 So.2d 589 (1946).
It will not be presumed that the attorney general will fail to perform his duty to bring an action of quo warranto if alerted and the circumstances warrant. It does not appear that he has been so requested herein or that the relator has sought permission to bring the action in his name. See 74 C.J.S. Quo Warranto § 4, p. 182.
We conclude, therefore, that prohibition does not lie upon the second basis suggested by the relator. Under the circumstances, it is unnecessary at this time to pass upon the question of the constitutional right of Judge Byington to continue in office subsequent to attaining the age of 70 years and we decline to do so.
The petition for writ of prohibition is denied and the rule nisi discharged.
CARROLL, DONALD K., J., and MELVIN, Associate Judge, concur.
NOTES
[1] The order of June 15, 1964, reads as follows:

"WHEREAS, upon an inspection of the court file in said estate, it appears that the Estate of Florence I. Herlan is being administered in this court and that Charles E. Booth, an attorney of Daytona Beach, Florida, is the executor of said estate and the residuary legatee; that the Will of Florence I. Herlan is dated the 30th day of May, 1958, and purports to have been witnessed on last said date by W. Cecil Grant, Mary W. Cummings, and one Joseph Hirschman, all of Daytona Beach, Florida; and it further appears that no known relatives were known to the executor at the time of offering said Will for probate, and that said executor has done nothing so far as said record is concerned, to locate or find any relatives, and no petition of any sort has been filed to determine kinsman or beneficiaries under said Will, and that publication of notice to creditors was published in the Daytona Beach Observer in Daytona Beach, Florida, and that Notice of Probate was published in the DeLand Sun News in DeLand, Florida.
"It further appears that a legatee, Muriel T. Ragland, filed a claim for $1,500.00 against said estate and that said alleged claim was sworn to before the said Charles E. Booth and filed by him; the alleged claim of Muriel T. Ragland being as follows: `for weekly injections for anemia for a period of six years for Mrs. Herlan  $1,500.00'; and that Gertrude Powell filed a claim in the amount of $500.00 against said estate, said claim being sworn to by said Gertrude Powell before the said Charles E. Booth and filed by him; that the filing fees for said claims were paid for out of the estate deposit which was deposited by the said Charles E. Booth. The alleged claim of Gertrude Powell being as follows: `for nursing and household care during illness of Florence I. Herlan,  $500.00'.
"No objections were filed to said claims. The claim of Gertrude Powell was paid by the said executor on the 2nd day of May, 1963, and the claim of Muriel T. Ragland was paid on the same date  May 2, 1963; and payment of claims witnessed by Charles E. Booth and Vivian Giometti.
"From information received by the court, it appears that said Florence I. Herlan lived at 370 Hartford Avenue, Daytona Beach, Florida, and that for a long period of time prior to her death, and at the time of her death, was an old, helpless, and senile lady of the age of 88 years, and for a long period of time had suffered with generalized arteriosclerosis, anemia, and senility.
"It further appears that said Charles E. Booth was not related to said Florence I. Herland and knew very little, if anything, about her or her people, and at first blush, it seems a most unusual act, to say the least, for an old and senile person described as mentioned above, to bequest all of her estate to an attorney and name him as her executor without bond, and without stating any reasons, business or social, ties of kinship or otherwise.
"It further appears that no accounts whatsoever have been filed from the beginning of said estate until this day and that said acts herein questioned are not rationally consonant with the ordinary restraints which the superiority of lawyers positions impose; that this record and all of said transactions cast suspicion and doubt sufficient, in the opinion of this court, to impose the principal of checks and balances, and without any roundaboutness, to warrant a thorough investigation of the case; and that said Charles E. Booth as executor, should be required to file his account and to relate all matters in question to the court and stand ready to show the bonafides of said transactions and to do whatsoever the court may consider proper and requisite in the premises, and It further appears that an inventory of said estate filed herein shows a total value of the estate to be $215,716.01, and that said inventory merely lists the securities to-wit: cash, bonds, and stocks, but nevertheless, said Florence I. Herlan lived at 370 Hartford Avenue, Daytona Beach, Florida, which said premises are described as the West 1/2 Lot 7 and Lot 8, Block F, Ortona; that said real estate above mentioned is not listed in said inventory and no mention is made of said real estate in said estate proceedings and that it appears that said Charles E. Booth changed the address for the payment of taxes thereon, to `Florence I. Herlan Estate, c/o Charles E. Booth, 512 Main Street, Daytona Beach, Florida,' and that said Charles E. Booth paid the taxes thereon in the amount of $527.02 on the 18th day of November, 1963, and that said Charles E. Booth is in possession of said premises and has failed and neglected to inform this court through inventory, schedule, or otherwise, that said real estate is an asset of said estate and should be included as an asset, and should inform this court in clear language why he has failed and neglected to file proper schedules of said property and to inform this court fully and completely in the said premises.
"ORDERED that said Charles E. Booth as executor of the estate of Florence I. Herlan, deceased, be and he is hereby required to file in this court within fifteen (15) days from the date hereof, an account of his executorship from the day of the date of his appointment, to and including the 15th day of June 1964, and to show at the foot of said accounting all assets which are in his hands and subject to be distributed, and to state specifically the location of said assets, with proper descriptions.
"It is further ORDERED that said executor shall submit to the court a copy of the federal estate tax return filed in said estate and known as Return #706. It is further
"ORDERED AND ADJUDGED that the said Charles E. Booth as executor of said estate shall not withdraw any funds whatsoever from any account or accounts in any banks or depositaries wherein said estate funds are deposited, or standing in his name or by whatsoever name said estate funds may be designated, but shall keep the same in status quo, undisturbed and undiminished, until said investigation may be completed, and that no funds shall be withdrawn for any purpose whatsoever, except upon the order of the County Judge of Volusia County, Florida, or his successors in office, and any bank wherein said estate funds may be deposited is hereby directed to not pay out any sums in the above mentioned account except upon order of the County Judge of Volusia County, Florida."
[2] The order of June 16, 1964, reads as follows:

"The record in this court reveals that Florence I. Herlan made a purported will on the 30th day of May, 1958, wherein she made three bequests of certain paintings to three legatees, and bequeathed the rest, residue, and remainder of her said estate, consisting of an inventoried value of $215,716.01, to Charles E. Booth, and nominated him as executor and exempted him from giving any bond. The said will also purported to have been witnessed by one W. Cecil Grant, Mary W. Cummings, and Joseph Hirschman, all of Daytona Beach, Florida.
"Although said record does not state, this court is informed that Florence I. Herlan was an old, helpless, and senile person of the approximate age of 88 years at the time of her death, and at the time of making said purported will was approximately 84 years of age. It further appears that Charles E. Booth, the residuary legatee, is an attorney at law with offices at 512 Main Street, Daytona Beach, Florida, and is an experienced attorney. It further appears from said record that of the two legal publications, one was published in the Daytona Beach Observer in Daytona Beach, Florida, and one was published in the DeLand Sun News in DeLand, Florida. It also appears that two claims were filed, one purporting to be for weekly injections for anemia for a period of six years for Mrs. Herlan, in the amount of $1,500.00; and one in the amount of $500.00 for nursing and household care during illness of Florence I. Herlan. It further appears that said claims were prepared, filed, and paid for by said Charles E. Booth, and both were paid by said executor on the 2nd day of May, 1963.
"It further appears that the said Charles E. Booth was not related to the said Florence I. Herlan and knew little, if anything, about her or her people. I[t] appears that no accounts have been filed from the date of appointment of said executor, to the day of the date of this Rule; and it further appears that the whole matter is suspicious and that said Will is presumptively void and that a presumption of imposition and an inference of wrong arises from the whole transaction. That said transactions were not rationally consonant with the ordinary restraints which the superiority of a lawyer's position imposes, and this court is not unconcerned when acts and transactions of a lawyer and executors appear to be out of bounds and presumptively wrong.
"It further appears that said Florence I. Herlan lived at 370 Hartford Avenue in Daytona Beach, Florida, which said premises are described as the West 1/2 of Lot 7 and Lot 8, Block F. Ortona, and is probably valued at upwards of $15,000.00, said executor having paid the taxes thereon for the year of 1963 in the amount of $527.02, the gross amount of said taxes being $548.98. It further appears that said real estate is an asset of said estate and was not included as an asset in the inventory filed in this court and no mention whatsoever of said real estate is contained in said probate proceedings, although it appears that said Charles E. Booth is in possession of said property and renting the same.
"It further appears that said executor has distributed to Muriel Ragland the paintings and jade ring left to her without an order of this court. It also appears that said executor has paid to the United States of America a gross estate tax per his return, of $42,697.42, and has paid the sum of $1,999.79 taxes due the Commissioner of Revenue of the State of Florida, and has filed his receipt therefor in this court. It does not appear from said records how the said Charles E. Booth, the executor, obtained the money and funds to pay said taxes, and whether he liquidated, sold, or hypothecated assets of said estate in order to procure said funds, although said purported will gives said executor no right to sell any assets of said estate or to dispose of same in any way whatsoever without previous order of this court; and this court should be informed fully and completely of the acts of said executor in such regard. That the failure of said executor to file a schedule and inventory of said real estate and the apparent liquidation of said securities, and apparent distribution of said estate without the sanction of this court by procuring an order thereon prior to acting, appears to be an attempt to evade and bypass this court in the administration of said estate and to frustrate and hinder the fair and rational administration of justice, and said acts and doings are contemptible, the aforesaid Charles E. Booth being a lawyer of wide experience and under a duty to further, not obstruct, the due administration of said estate.
"NOW THEREFORE, You are hereby NOTIFIED, DIRECTED, AND ORDERED TO: show cause before the Judge of this court on Monday, the 6th day of July, 1964, at the hour of 10:00 o'clock in the forenoon, at the office of the County Judge in the Courthouse at DeLand, Volusia County, Florida, why you have failed and neglected to file a proper schedule and inventory of said estate, including the real estate above mentioned belonging to said estate; and why you have distributed a portion of said estate without procuring an order of this court for distribution; and why you have evaded and bypassed this court in the apparent liquidation of said securities belonging to said estate; and what other portions of said estate have been distributed and to whom; and how much; whether in money or in securities; and whether you have transferred any securities whatsoever to your name or any other persons named for you or in your behalf; and to inform this court what assets of said estate are in your hands subject to be distributed; and that you produce satisfactory evidences to this court at the time and place aforesaid, that said assets are safely in your custody and control and where the same are located. That you at said time and place produce and tender for the court's inspection, all bank statements, cancelled checks, vouchers, and other pertinent data relating to said estate, and show cause why you should not be compelled to do the things herein set forth and required to be done, and why you should not be adjudged to be in contempt of this court for hindering the administration of justice and the lawful administration of said estate in the particulars hereinabove set forth. That you show cause before this court at the time and place aforesaid, why the said purported will should not be set aside and declared void as against the public policy of the State of Florida and against the overriding social interests of integrity and rectitude of legal proceedings, and why you should not be removed as executor of said estate for maladministration of said estate and why the Attorney General of the State of Florida should not be made a party to said proceedings, as in event of escheat; and why the said matter should not be referred to the Grievance Committee of the Volusia County Bar Association for such action as may seem proper."